## RICHARD KING v. DALTON MOTORS, INC.
## WALTER SHIRLEY AND OTHERS, THIRD-PARTY DEFENDANTS.

109 N. W. (2d) 51.

April 28, 1961—No. 38,201.

*Kelly & Callinan,* for appellant.
*Blethen, Ogle & Gage,* for respondents.

DELL, CHIEF JUSTICE.

This is a declaratory judgment action instituted for the purpose of determining the validity of option provisions "to extend this lease" and "to purchase said property"; and to have the option provisions contained in the lease stricken and declared null and void.

On December 22, 1958, Walter Shirley, as lessor, and the defendant, Dalton Motors, Inc., as lessee, entered into a written lease covering certain business property owned by Shirley. The lease, which was for a 5-year term commencing January 1, 1959, contained the following provision:

"Lessor agrees to give tenant a first option to extend this lease for an additional five (5) years, the terms and conditions to be agreed upon at the time of the option renewal. It is also agreed that lessor will give tenant a first option to purchase said property at any time after January 1, 1959, at a price to be negotiated and to be agreeable between the parties at the time of sale."

Thereafter, without the actual knowledge of the defendant, Shirley and his wife sold and conveyed the premises to Hartzell Coal Company on August 31, 1959, which company in turn sold and conveyed it to the plaintiff, Richard King, on September 1, 1959. Both of the purchasers had actual knowledge of the terms of the lease.

After causing the Shirleys, Hartzell Coal Company, and Helen R. King, plaintiff's wife, to be joined as third-party defendants, the defendant, Dalton Motors, Inc., filed a third-party complaint and a counterclaim seeking, among other things, specific performance of the option-to-purchase provision. It appeals from a summary judgment in favor of the plaintiff and third-party defendants.

■ It is a fundamental rule of law that an alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable.[1] Consequently, where substantial and necessary terms are specifically left open for future negotiation, the purported contract is fatally defective.[2] On the other hand, the law does not favor the destruction of contracts because of indefiniteness,[3] and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced. These principles apply to an option to purchase or an option to renew a lease with the same force as to any other contract.

■ The phrase "first option to purchase," or like language in lease agreements, has frequently been challenged as being too vague and indefinite to permit enforcement. It is generally agreed that if the "first option" provision specifies that the purchase price and other terms of the sale are to be determined by the offer of a third person the terms of the option are sufficiently ascertainable to render the contract definite and certain.[4] Some courts, however, have held that the isolated use of such phrases as "first option," "right of first refusal," or "first chance to buy" does not in itself fix any mode for determining the terms of the sale and such phrases are consequently too uncertain and incomplete.[5] We are of the opinion that such a strict

---

[1]See, 17 Dunnell, Dig. (3 ed.) § 8781 (specific performance); 4 Dunnell, Dig. (3 ed.) § 1726 (damages for breach). It is often said that specific performance requires a greater degree of certainty than an action for damages. McClintock, Equity (2 ed.) § 56; Restatement, Contracts, § 370. However, under modern practice the practical significance of this distinction is questionable. See, e. g., 36 Calif. L. Rev. 120.

[2]Gruesner v. Thatcher, 158 Minn. 470, 197 N. W. 968; Leslie v. Mathwig, 131 Minn. 159, 154 N. W. 951; see Annotation, 68 A. L. R. (2d) 1221, collecting cases in which the terms of payment for property are expressly kept open.

[3]See, Hartung v. Billmeier, 243 Minn. 148, 66 N. W. (2d) 784.

[4]Johnson v. Fitzke, 234 Minn. 216, 48 N. W. (2d) 37 (implied recognition of rule); Driebe v. Fort Penn Realty Co. 331 Pa. 314, 200 A. 62, 117 A. L. R. 1091; see, Annotation, 117 A. L. R. 1095, 1098.

[5]See, e. g., Folsom v. Harr, 218 Ill. 369, 75 N. E. 987, 109 A. S. R. 297;

construction is unwarranted and unrealistic. By their continued and repeated use in real estate transactions, these phrases have acquired an established and technical meaning. Unless the context of the agreement indicates otherwise, the use of "first option to buy" or a similar expression imports a preferential right on the part of the lessee to purchase the leased premises at the same price and upon the same terms as contained in any bona fide offer from a third person acceptable to the lessor.[6]

However, the technical meaning usually ascribed to certain phrases is not controlling where the agreement otherwise indicates that the parties did not intend to use the words or phrases in their technical sense. The intention of the parties must be gathered from the instrument as a whole and cannot rest solely upon isolated clauses. For example, most courts properly hold that "first option" provisions are conditional in that the lessee's right to purchase the property is dependent upon the lessor's willingness to sell.[7] In this regard such provisions are more akin to preemptive rights than a true option.[8] In several cases, however, it has been held that the phrase "first option to buy" may give rise to an absolute option if other language in the agreement so indicates.[9]

Similarly, the language used in the instant case indicates that the phrase "first option to purchase" was not used in its ordinary sense so as to give the lessee the right to purchase the property at the same

Fogg v. Price, 145 Mass. 513, 14 N. E. 741; Wolf v. Lodge, 159 Iowa 162, 140 N. W. 429; McClung Drug Co. v. City Realty & Investment Co. 91 N. J. Eq. 216, 108 A. 767.

[6]See, e. g., Nelson v. Reisner, 51 Cal. (2d) 161, 331 P. (2d) 17; Jurgensen v. Morris, 194 App. Div. 92, 185 N. Y. S. 386; Tamura v. DeIuliis, 203 Ore. 619, 281 P. (2d) 469.

[7]Falkenstein v. Popper, 81 Cal. App. (2d) 131, 183 P. (2d) 707; R. I. Realty Co. v. Terrell, 254 N. Y. 121, 172 N. E. 262; see, Annotation, 34 A. L. R. (2d) 1158, and cases cited under note 6.

[8]See, Wellmore Builders, Inc. v. Wannier, 49 N. J. Super. 456, 140 A. (2d) 422; In re Estate of Rigby, 62 Wyo. 401, 167 P. (2d) 964; Barling v. Horn (Mo.) 296 S. W. (2d) 94.

[9]See, e. g., Steen v. Rustad, 132 Mont. 96, 313 P. (2d) 1014; Roth v. Snider, 25 Wash. (2d) 514, 171 P. (2d) 819.

price offered by a third party. To the contrary, the parties specifically provided that the price was "to be negotiated and to be agreeable between the parties at the time of sale." Such a provision provides no standard for ascertaining the price or any other condition of the sale and is, in our opinion, fatally uncertain and unenforceable in any form of action.

Defendant contends that the recent trend of authorities is to find certainty even in situations where the parties indicate that the terms of purchase are to be agreed upon in the future. Most of the decisions cited are distinguishable on their facts or involve agreements in which the technical meaning of the "first option" phrase is not negated by other language in the instrument. However, in Brenner v. Duncan, 318 Mich. 1, 3, 27 N. W. (2d) 320, 321, the court found the following lease provision to be sufficiently definite and certain to permit enforcement:

"That in the event the land is to be sold, the tenant will be given first preference and allowed to purchase said land *if the parties can agree on the price*." (Italics supplied.)

We have carefully examined the rationale of this and similar decisions[10] and conclude that it is neither persuasive nor in accordance with the great weight of authority.

■ Our conclusions apply with like effect to the "first option to extend" provision of the lease, although an exception has sometimes been said to exist where the amount of the rent is the only provision left for future agreement.[11] However, since all of the terms and conditions of the renewal lease here were "to be agreed upon," it is unnecessary for us to pass upon the validity of the suggested exception.

■ The plaintiff's other assignments of error are without merit and are not of sufficient general interest to require discussion.

Affirmed.

---

[10]See, also, Parker v. Murphy, 152 Va. 173, 146 S. E. 254.

[11]Chaney v. Schneider, 92 Cal. App. (2d) 88, 206 P. (2d) 669. But see Ablett v. Clauson, 43 Cal. (2d) 280, 272 P. (2d) 753, questioning the validity of the Chaney decision. See, also, Hughes Realty Co. v. Breitbach (N. D.) 98 N. W. (2d) 374.