**William H. HOOD, Jr., et al.**

v.

**Henry HAWKINS et al.**

**No. 81–559–Appeal.**

Supreme Court of Rhode Island.

June 7, 1984.

Lewis Z. Lavine, Woonsocket, for plaintiffs.

Bradford Gorham, Providence, Kathleen Managhan, Corcoran, Peckham & Hayes, Newport, for defendants.

## OPINION

SHEA, Justice.

The plaintiffs appeal from a judgment entered in Superior Court dismissing their complaint pursuant to Rule 41(b)(2) of the Superior Court Rules of Civil Procedure. The plaintiffs, twenty-one in all, are owners of cottages built upon a parcel of land owned by the defendants.[1] The defendants are Henry and Marion Hawkins, the former owners, and Alfred and Anna Tillinghast, the purchasers. The plaintiffs brought an action to compel specific performance of an oral contract for an option to purchase or for a right of first refusal in the sale of certain lots in a large tract of land, which lots have been leased to the plaintiffs. The complaint also prayed for compensatory and punitive damages. The issues of liability and damages or equitable relief were severed to be tried separately. A trial on the issue of liability before a justice of the Superior Court, sitting without a jury, was conducted. He determined that the plaintiffs had shown no right to relief and dismissed their complaint. We affirm.

### I

The land in question comprises approximately 150 acres located on the north side of Bowdish Reservoir in the town of Glocester. The land had been owned by members of the Hawkins family since the turn of the century. In 1961 Henry Hawkins became the sole owner of the fee, and thereafter he remained the sole owner of the property until it was sold to the Tillinghasts in 1972 and 1973.

At the time Hawkins agreed to sell his land to the Tillinghasts, it was divided into parcels A and B. Parcel A was a tract of over 100 acres situated to the north and east of parcel B. In April 1972, Hawkins sold parcel A to the Tillinghasts along with an option to purchase parcel B. Parcel B fronted on the reservoir and contained all of plaintiffs' lots. Parcel B also included land that had not been rented out by Hawkins and land on which Hawkins himself had built cottages. The Tillinghasts exercised their option to purchase parcel B in October 1973.

Beginning in the 1920s and continuing until 1973, the Hawkinses leased lots to numerous tenants, including plaintiffs. Many of the present tenants had written leases. Some acknowledged that Hawkins had only shown them the form that he used for written leases. These forms contained blanks that were filled in to show the date and the name of the tenant, to describe the lot, and to insert other nonstandard information. There were pertinent standard provisions in the leases. Money to be paid was described as rental money, lessees were permitted to build and maintain camps on the leased premises, such building "shall be and remain the personal property of said lessee," and the lessee had the right to remove his building. In addition, permission was given to make other improvements, any building erected was required to conform to the town building regulations, and the lessee was required to secure a permit before building.

The tenants built summer camps on their rented lots. They also improved their lots by clearing, filling, and building beaches

1. The following plaintiffs are before us on appeal: Wilfred Cloutier, Fedolard Sylvestre, Gerald Shaw, Raymond Giard, Madeleine Dulac, Omer Nault, Eugene Dumas, Donald Dumas, Charles Waterman, Andrew Beauvais, Roland Pepin, Maurice Lalime, Albert Stevenin, Richard Brodeur, Robert Custis, Frederick Robinshaw, Howard Frederickson, Francis Conneally, Calice St. George, Charles E. Medbury, and Normand Beauregard. There were originally twenty-three plaintiffs in the case. Two, however, William H. Hood, Jr., and Francis Hurst, are not properly before the court, despite the inclusion of their names in the notice of appeal and in the caption. Their complaints were dismissed below, and a judgment to that effect was entered on March 16, 1979. Neither party filed a notice of appeal from that judgment. As a result, their dismissal is res judicata.

and retaining walls. The camps were designed for use, and were used, during the summer months. When a tenant wished to sell his camp and assign his lease, he would first obtain Hawkins's approval, in accordance with lease requirements.

The evidence establishes that over the years Hawkins was repeatedly approached by the tenants with inquiries about a future disposition of the land. These questions usually arose when the annual rental payments were made. The trial justice found that Hawkins answered almost invariably, and with only slight inconsequential variations, that "when he decided to sell, if the price were right and could be agreed on, and if conditions were right, and he was ready to sell, he would give the tenant a chance, or a first chance to buy." The legal effect of this response is the basis of the controversy before the court.

In February 1974 plaintiffs brought this action based upon the oral statement or response of Hawkins. They claimed that when Hawkins decided to sell, they had either an option to purchase the land or a right of first refusal. The trial justice dismissed plaintiffs' complaint against the Hawkinses and the Tillinghasts pursuant to Rule 41(b)(2). The plaintiffs appeal.

## II

■ Our examination of the record has disclosed that defendants Alfred and Anna Tillinghast are not properly before the court. On May 22, 1981, a judgment was entered dismissing the complaint of all plaintiffs against the Tillinghasts under the provisions of Rule 41(b)(2). The plaintiffs did not file a notice of appeal from this judgment.

Rule 3 of the Supreme Court Rules provides that an appellant, in order to perfect an appeal to this court, must specify in his notice of appeal what judgment, order, or decree or part thereof is being appealed and he also must specify the date it was entered. In the case at bar, the only judgment from which plaintiffs filed a notice of appeal was the judgment entered on May 20, 1981, dismissing their complaint against Henry and Marion Hawkins. As a result, only the Hawkinses are properly before the court, and the Tillinghasts' judgment is now res judicata.

■ The timely filing of a notice of appeal as prescribed by Rule 3 of our rules is mandatory and jurisdictional. *See Smith v. Smith*, 119 R.I. 642, 645 n. 1, 382 A.2d 182, 183–84 n. 1 (1978); *Martin v. Estrella*, 107 R.I. 247, 251, 266 A.2d 41, 45 (1970). Failure to comply with this jurisdictional prerequisite deprives the court of the power to decide the issues as they apply to these defendants. *See D'Agostino v. Yellow Cab Company of Providence*, 104 R.I. 168, 169, 243 A.2d 98, 99 (1968).

We note, however, that if the Tillinghasts were here, the outcome would not be different. We would still be presented with the same issues, and our resolution of them would still be in favor of defendants. Therefore, plaintiffs have not been prejudiced by our lack of jurisdiction over the Tillinghasts because of their failure to appeal the judgment entered on May 22, 1981.

## III

The issue is whether the trial justice made an error of law when he determined that Hawkins's response created neither an option nor a right of first refusal. The plaintiffs claim that he misconceived the difference between the two. As we stated, the case was tried without a jury and comes before us following the granting of defendants' motion to dismiss under Rule 41(b)(2).

■ In ruling on this motion, a trial justice may either determine the case on the record as it exists at the time a defendant files his motion or defer his judgment until both parties have completed their presentations of the evidence. The trial justice sits as a trier of fact as well as of law. Consequently, he weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences. He need not view the evidence in a light

most favorable to a plaintiff. If after examining the evidence, the trial justice is convinced that plaintiff has failed to sustain his burden of proof, then he may grant a defendant's motion to dismiss. On review, we must determine whether the trial justice's findings are supported by the evidence or whether in making such findings he has overlooked or misconceived material evidence. If the trial justice has made supportable findings, we must then determine whether he has applied the correct rule of law. *J.K. Social Club v. J.K. Realty Corp.*, R.I., 448 A.2d 130, 133 (1982).

## A

An option can be defined as "a unilateral contract in which the optionor agrees with the optionee that he has a right to buy the optionor's property according to the precise terms and conditions of the contract." *Butler v. Richardson*, 74 R.I. 344, 350, 60 A.2d 718, 722 (1948). On the issue of an option, plaintiffs agree in their brief "that Hawkins never intended to put a decision in the hands of a tenant." They state further on that "Hawkins *always had the power*" of control over the disposition of his land. (Emphasis in original.) In effect, plaintiffs concede that they never had an option to purchase their individual lots. The trial justice's finding to that effect was correct.

Corbin describes an option for the purchase of property as a situation in which the buyer has a legal power of acceptance—a power by tendering money to create in himself a right to an immediate conveyance of the property and in the owner a duty of such conveyance. 1A *Corbin on Contracts* § 259 at 460 (1963). "[T]he crux of the matter is the open discretion in the optionee to take or to leave the proposal." 1 *Williston on Contracts* § 61A at 199 (3d ed. Jaeger 1957).

The language of Hawkins's response never granted plaintiffs a power of acceptance and never imposed upon himself a duty of conveyance. All discretion over the sale of the land rested with Hawkins.

Absent this right in one party and duty upon another, no legally enforceable option could exist.

## B

We turn now to the issue of whether plaintiffs had a right of first refusal. The distinction between an option and a right of first refusal has been recognized by this court, the latter being termed an "independent privilege." *Butler v. Richardson*, 74 R.I. at 349, 60 A.2d at 721. It has also been described as a "valuable prerogative." 11 *Williston on Contracts* § 1441A at 949 (3d ed. Jaeger 1957). It is not an offer and creates no power of acceptance. It is a transaction by which one party acquires what can be variously described as the "Right of First Refusal," the "First Right to Buy," or the "Right of Preemption." 1A *Corbin on Contracts* § 261 at 468 (1963). A right of first refusal "does not give the [possessor of it] the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the [right of first refusal] at the stipulated price." *Mercer v. Lemmens*, 230 Cal.App.2d 167, 170, 40 Cal.Rptr. 803, 805 (1964). This court has described a right of first refusal in similar fashion. "[A] first refusal to purchase * * * does not become effective unless the respondents are willing to sell. If they are willing to sell they may not sell to anyone other than the complainants until an opportunity is afforded complainants to purchase at the price offered." *Butler v. Richardson*, 74 R.I. at 349, 60 A.2d at 721.

The trial justice found as fact that Hawkins's oral statement to plaintiffs was that "when he decided to sell, if the price were right and could be agreed on, and if conditions were right, and he was ready to sell, he would give the tenant a chance or a first chance to buy." The plaintiffs contend that this statement satisfies the essential elements of a right of first refusal. The defendants maintain that the trial justice was correct when he determined that

Hawkins's statement was too vague and indefinite to be legally enforceable. We agree.

*King v. Dalton Motors, Inc.*, 260 Minn. 124, 109 N.W.2d 51 (1961), included a lease provision stating that:

"'Lessor agrees to give tenant a first option to extend this lease for an additional five (5) years, the terms and conditions to be agreed upon at the time of the option renewal. It is also agreed that lessor will give tenant a first option to purchase said property at any time after January 1, 1959, at a price to be negotiated and to be agreeable between the parties at the time of sale.'" *Id.* at 125, 109 N.W.2d at 52.

The Minnesota court held this provision to be "fatally uncertain and unenforceable in any form of action" because it provided no standard for ascertaining the price or any other condition of the sale. *Id.* at 128, 109 N.W.2d at 54. The court criticized a decision from a neighboring state which held that a provision in a lease stating, "if the parties can agree on the price," was sufficiently definite and certain to permit enforcement. The Minnesota court said the rationale of that decision was neither persuasive nor in accordance with the great weight of authority. *Id.*

*Fogg v. Price*, 145 Mass. 513, 14 N.E. 741 (1888), another right-of-first-refusal case, stands for the proposition that a lease provision that does not fix the price and terms of sale, or does not provide a method for subsequently fixing them, is not specifically enforceable. It "is simply an agreement to give the lessee the first chance to make a contract,—an agreement to sell if the parties can agree, but not otherwise." *Id.* at 515, 14 N.E. at 743. There are numerous other cases to the same effect. *See, e.g., Folsom v. Harr*, 218 Ill. 369, 373, 75 N.E. 987, 988 (1905); *Wolf v. Lodge*, 159 Iowa 162, 164, 140 N.W. 429, 431 (1913); *Rolfs v. Mason*, 202 Va. 690, 695, 119 S.E.2d 238, 242 (1961).

The case at bar is distinguishable from *Butler, supra*, which involved a covenant in a written lease that read as follows:

"'Or if the Lessors shall have any offer for the purchase of said premises, which the Lessors are willing to accept, the Lessors prior to accepting same, give the Lessees an opportunity to purchase the said premises on the same terms, by notifying the Lessees in writing of such offer and giving the Lessees 10 days thereafter in which the Lessees shall decide if they will purchase said premises on the same terms.'" *Butler v. Richardson*, 74 R.I. at 346, 60 A.2d at 721.

The court said that this was "clearly a first refusal to purchase." *Id.* at 349, 60 A.2d at 721. The lessors' intent to grant a right of first refusal is evident from the language of the covenant. The covenant also provides a means for determining the price and terms of the sale.

Henry Hawkins's statement to plaintiffs about the disposition of his property is too vague and indefinite to constitute a legally enforceable right of first refusal. The price term is not fixed, and no method is provided for fixing it in the future. It is left to the agreement of the parties, something that may never occur. The conditions term is likewise too vague and indefinite to make this an enforceable right of first refusal. We can only speculate about what conditions had to be before Hawkins would agree to sell to plaintiffs. Furthermore, Hawkins's statement to plaintiffs is so tentative that it cannot be determined whether he intended to grant them a right of first refusal.

∎ Hawkins's absolute reservation unto himself of the decision to sell is not sufficient to create a right of first refusal. There must be more. The grantor's intent must be clear and either the price and the conditions of sale must be fixed, or there must be a means for subsequently ascertaining them. None of these is present here.

We conclude that the trial justice was correct when he found that there was no

right of first refusal. We also conclude that he applied the correct rule of law when making this determination. Our resolution of these issues is dispositive of the case. Consequently, it is unnecessary for us to reach the remaining issues.

The plaintiffs' appeal is denied and dismissed. The judgment below is affirmed, and the papers of the case are remanded to the Superior Court.