**LAKE MINNETONKA HOMES, INC., Appellant,**

v.

**James Raymond SIDWELL, et al., Respondents,**

**Steve Inman, et al., Defendants.**

**No. C7-87-195.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Granted Nov. 18, 1987.

Marvin L. Gurewitz, Minneapolis, for appellant.

Robert L. McCollum, Bloomington, for respondent.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Lake Minnetonka Homes (LMH) appeals from an amended judgment, which granted LMH, the vendor, specific performance on a contract for deed. Respondents Sidwells, the vendees, filed a notice of review, arguing the trial court erred in not rescinding the entire contract for deed based on the indefinite renegotiation clause. We reverse and remand.

## FACTS

In 1981, the Sidwells became interested in purchasing a duplex in Plymouth from LMH for investment purposes. Agreeing on a purchase price of $154,000, the Sidwells and LMH signed a purchase agreement with an attached addendum (called the renegotiation clause), which provided:

> It is mutually agreed by and between the party of the first part [LMH] and the parties of the second part [the Sidwells] that the Contract for Deed is assumable and that in the event financing is not available to parties of the second part on contract maturity date, *the contract may be renegotiated at terms agreed upon by both parties.*

(Emphasis added.) This provision was also incorporated in the subsequent contract for deed. The financing terms required monthly payments of $1,520 with a balloon payment in September 1984, but allowed the parties to renegotiate if financing was not available when the balloon was due.

The Sidwells wanted this clause because they owned another duplex in Hopkins which also had a balloon payment due in 1984. They relied upon the clause in entering the contract and thought it bound LMH to renegotiate. The real estate agent said the clause would help cure any financial problems they had relating to the balloon on the Plymouth property.

The Sidwells also alleged that the president of LMH assured them that they would receive over $600 per month per unit in rent and that the property would be worth over $200,000 after performance of the contract. The Sidwells proceeded with the purchase, but now allege they operated at a $450–$700 per month loss.

From the date of purchase in 1981 until the date of the balloon payment in September 1984, the Sidwells were current on monthly contract for deed payments. When the balloon came due, however, it

became apparent that financing would be a problem. The parties stipulated at trial that the Sidwells could not obtain financing.

In September 1984, the Sidwells and LMH began to renegotiate pursuant to the clause. The Sidwells offered to quitclaim the property to LMH. The effect of this offer would have been for the Sidwells to lose $12,000 in equity. LMH refused to take the property back.

One of LMH's renegotiation offers was based on the underlying mortgage of over $100,000 from Rothschild Financial Corporation. LMH was responsible for those mortgage payments under the contract for deed. In renegotiations, LMH offered to have the Sidwells assume the underlying mortgage, with the Sidwells receiving LMH's equity in that property, in exchange for the Sidwells' mortgage and equity in the Hopkins duplex. LMH offered in the alternative to extend the contract for deed for three years at 12% interest. The Sidwells refused these offers.

LMH brought this action for specific performance of the contract for deed. First, the trial court found that the renegotiation clause was void because it was indefinite. The court further found that, although the renegotiation clause was indefinite, it was not so essential to the bargain as to require rescission of the remainder of the contract for deed.

The trial court granted LMH specific performance of the contract—allowing it to recover the money owed it under the contract for deed—enforceable by a vendor's lien against the property. The trial court refused to grant LMH a money judgment, however, and further held that LMH could not take a deficiency judgment if it were the only bidder at the foreclosure sale. The trial court's amended judgment recomputed the amount of the vendor's lien and found LMH liable for the underlying mortgage.

Although the trial court granted LMH specific performance, LMH appealed, arguing among other things that the trial court erred in not allowing a money judgment to issue and in ruling it could not collect a deficiency judgment if it bid at a foreclosure action.

The Sidwells filed a notice of review, arguing that the renegotiation clause was such a substantial part of the contract that its unenforceability rendered the whole contract void. They argue that rescission is appropriate. They and their attorney further state that all rentals received after the balloon date of September 1, 1984 have been placed in escrow.

Since the trial, Rothschild Financial Corporation has foreclosed the underlying mortgage on the property by sheriff's sale on January 28, 1987. Federal National Mortgage Association purchased the property for over $121,000. The redemption period expired on July 28, 1987.

## ISSUE

Was the indefinite renegotiation clause such a substantial part of the contract as to require the rescission of the entire contract for deed for indefiniteness?

## ANALYSIS

The parties and the trial court agreed that an indefinite contractual clause is void and unenforceable. *See King v. Dalton Motors, Inc.*, 260 Minn. 124, 126, 109 N.W.2d 51, 52 (1961) (a contractual term which is so vague, indefinite and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable). They further agreed that the renegotiation provision in this contract for deed is indefinite and unenforceable.

The parties do not agree, however, on whether the voiding of the renegotiation provision in the contract operates to void the entire contract. First, the Sidwells argue the "intent of the parties" as to the fundamental terms of the contract cannot be "ascertained with reasonable certainty." Specific performance is therefore not appropriate. *See Brownlee v. Ertzos*, 289 Minn. 83, 91, 182 N.W.2d 697, 702 (1970). Indeed, here, the terms cannot be ascertained with reasonable certainty because testimony indicated that Sidwell thought

the clause guaranteed renegotiation, while LMH considered the clause optional. All of the terms of the contract were potentially subject to renegotiation and therefore potentially indefinite.

Second, they argue if "substantial and necessary terms are specifically left open for future negotiation," the entire contract is fatally defective. *King*, 260 Minn. at 126, 109 N.W.2d at 52.

> [W]hen it appears that a contract has left open for future agreement or negotiation the terms of payment for property, it is clear that the contract is not specifically enforceable.

*Brownlee*, 289 Minn. at 92, 182 N.W.2d at 702. Conversely, if the indefinite term is a "minor matter" of "comparatively little importance," such as the type of "window fastenings" to be used in a contract for sale of real estate, the indefinite clause may be voided or left unperformed, while the remainder of the contract is enforceable. 1 S. Williston, *Contracts* § 48 (3d ed. 1979).[1]

Rescission of the contract for indefiniteness is not liberally allowed. *King*, 260 Minn. at 127, 109 N.W.2d at 53. Here, however, the renegotiation clause was a substantial part of the contract; voiding the clause rescinds the entire contract for deed. The substantial nature of the clause is demonstrated by the alternatives the parties advanced when they began to negotiate. For example, the parties offered to quit claim the property back and forth, exchange equities and ownership of the Plymouth and Hopkins properties, or extend the balloon payment for three years. The extreme alternatives the parties considered demonstrate that the clause was a substantial part of the contract.

The dissent argues that, since renegotiation was merely optional, the clause added no more contractual rights than if the renegotiation clause had not existed at all. It relies on the very factor which made the renegotiation clause unenforceable—its indefiniteness—to argue that the clause is not essential to the rest of the contract. While we note that a stronger case for rescission would have existed had the renegotiation term been mandatory, the terms the parties could opt to renegotiate were so broad as to change the whole complexion of the contract.

Even though the renegotiation clause was permissive rather than mandatory, the clause was the Sidwells' inducement for entering the contract. An addendum to a purchase agreement is not added and executed in a vacuum. It indicates and substantiates the testimony of the Sidwells that they were concerned about two balloon payments in one year, and that they relied upon the clause in entering the contract and thought it bound LMH to renegotiate. Its existence gave the parties the opportunity to change fundamental terms of the contract, including the price, the interest rate, or whether the parties would even consummate the deal. As such, it was a substantial and significant term of the contract; its indefiniteness reflected upon the whole contract, requiring rescission.

We are aware that the parties have partly performed this contract. To put the parties in their previous position, as if the contract had never existed, will require a thorough accounting. The trial court is instructed to undertake this accounting, through the taking of additional evidence if necessary.

---

1. Generally, terms allowing renegotiation of, or indefinite arrangements regarding, financing and mortgages are significant and prevent specific performance of the contract. *E.g.*, *Erickson v. Nelson*, 275 Minn. 561, 562, 146 N.W.2d 768, 770 (Minn.1966); *Rahm v. Cummings*, 131 Minn. 141, 155 N.W. 201 (1915) (specific performance denied where a purchase agreement failed to specify the time for payment on a mortgage referred to in the purchase agreement); *Leslie v. Mathwig*, 131 Minn. 159, 154 N.W. 951 (1915) (specific performance denied where the contract for deed in question provided for a down payment with the balance to be arranged by adjustment of mortgages); *cf. Furuseth v. Olson*, 297 Minn. 491, 210 N.W.2d 47, 49 (1973) (purchase agreement which required the purchasers to build a road to the property to the highway as agreed upon was definite and certain enough to be specifically enforced even though the contract did not specify the width or surface of the road).

Finally, since our holding grants rescission of the contract, we do not address the specific performance issues.

## DECISION

The trial court is reversed and the case remanded, with instructions to rescind the contract for deed in its entirety and to determine, through additional testimony if necessary, the expenses and offsets necessary to put the parties in the position that they would have been had the contract never existed.

Reversed and remanded.

NIERENGARTEN, Judge, (dissenting).

I respectfully dissent.

This case involves an indefinite contract clause which purportedly allowed the parties to renegotiate the purchase terms when the balloon payment became due. The majority concludes the renegotiation clause was a "substantial part of the contract". I disagree on two grounds.

First, the renegotiation clause is not necessarily a substantial part or an essential element of the contract because a prior contract clause specifically states the payment terms. The contract provides that specified monthly payments were due until September 1, 1984, after which time "the entire balance remaining together with interest thereon *shall* be due and payable in full * * *." (emphasis added).

Second, the clause is permissive and it is superfluous because it merely states what the parties already were free to do under general contract law principles, therefore the clause is not essential to the contract. The clause indicates that the parties "may" renegotiate the contract and that the contract may be renegotiated "at terms *agreed* upon by both parties." (emphasis added). Contracting parties always may renegotiate, amend, or substitute contracts if they mutually agree to those changes. Since the renegotiation clause is nothing more than a restatement of general contract principles, the clause is superfluous and therefore nonessential.

The intent of the parties as to the fundamental terms of payment are evident from the contract: the parties obviously intended Sidwell would make monthly payments of $1,520 from September 1981 until September 1984, at which time the unpaid balance would become due and payable. Since the contract, absent the nonessential clause, definitely states the parties' obligations at the time of the balloon payment, the contract can be specifically enforced because its terms are ascertainable with reasonable certainty.

Before specific performance can be granted, the contract must * * * be certain and complete. However, it is not necessary that every possible question be answered in advance by the parties before a contract can be specifically enforced; it is only necessary that the intent of the parties as to fundamental terms be ascertainable with reasonable certainty.

Furthermore, the law does not favor invalidation of contracts because of indefiniteness, and if the terms can be reasonably ascertained in a manner prescribed in the writing, the contract will be enforced.

*Furuseth v. Olson*, 297 Minn. 491, 492–93, 210 N.W.2d 47, 49 (1973) (citations omitted).

I would affirm the district court.