[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is a matter for decision following a non-jury trial in which Plaintiff Karen A. Bissonnette (Bissonnette) brought a complaint against Defendant Anthony F. Ventura (Ventura). Bissonnette sought a partition by sale of property owned in joint tenancy with Ventura, as well as attorney's fees and such other relief as the Court deems just. Ventura counterclaimed seeking compensatory damages for his payment of all joint accounts, plus interest and costs; compensatory damages for repairs caused by vandalism to his truck; compensatory damages for all payments made toward the mortgage, taxes, insurance, utilities, sewer and water bill, maintenance and improvements; attorney's fees; and such other relief the Court deems just. Jurisdiction is pursuant to G.L. 1956 §8-2-13.
 FACTS AND TRAVEL
On September 14, 1988, Bissonnette and Ventura, as joint tenants, purchased a parcel of real property with a house. Bissonnette and Ventura purchased the property for $110,000.00, making a down payment of $11,000.00 and mortgaging the remaining $99,000.00. Bissonnette and Ventura each contributed $5,500.00 to the down payment.
Bissonnette and her minor child and Ventura and his minor child resided at the home until July 1, 1997. (Ventura's minor child resided at the home on weekends and during vacations at first, but eventually resided there permanently.) From September 14, 1988 until July 1, 1997, Ventura made mortgage payments totaling approximately $80,855.69 and also paid taxes, insurance, water and sewer bills from funds in a joint checking account with Bissonnette. Bissonnette paid all other household expenses, such as utility and food bills, out of a checking account held jointly with her mother. When Bissonnette left the property in July 1997, she ceased payments for mortgage, taxes, insurance, and any household expenses. She never received any rents or proceeds from the property.
Ventura's truck was twice vandalized within several months of Bissonnette's departure from the home. The first instance involved spray paint on the side of the truck, while the second involved damage to the truck's tires caused by roof nails. The repair costs total approximately $638.16.
This Court has heard testimony, examined all exhibits, and reviewed the evidence before it. Decision is herein rendered.
 STANDARD OF REVIEW
"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." R.I. Super. R. Civ. P. 52(a). In a non-jury trial, "the trial justice sits as a trier of fact as well as of law." Hood v.Hawkins, 478 A.2d 181, 184 (R.I. 1984). "Consequently, [s]he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences." Id. "The task of determining credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." State v. Sparks, 667 A.2d 1250, 1251 (R.I. 1995) (citingWalton v. Baird, 433 A.2d 963, 964 (R.I. 1981)). "It is also the province of the trial justice to draw inferences from the testimony of witnesses. . . ." Id.; Rodriques v. Santos, 446 A.2d 306, 312 (R.I. 1983) (holding question of who should be believed one for trier of fact). When rendering a decision in a non-jury trial, "the trial justice need not engage in extensive analysis to comply with this requirement." White v. LeClerc,468 A.2d 289, 290 (R.I. 1983). Thus, "even brief findings will suffice as long as they address and resolve the controlling factual and legal issues." Id.
 FAILURE TO JOIN MORTGAGE COMPANY
As a preliminary issue, Ventura, citing § 34-15-20, argues that Bissonnette's failure to join the mortgage company to this suit is fatal to her claim for partition. This Court does not agree. Section 34-15-20
specifically refers to reversioners and remaindermen, while a mortgagor is akin to a lien holder. The statute provides for the ascertainment of persons in being who would have a reversionary or remainder interest in the property, such as in the making of a testamentary class gift. This Court does not read § 34-15-20 to refer to the mortgage company. It is well-settled that, "[t]he holder of a mortgage or other lien upon the undivided interest of a co-tenant is not, in the absence of a statute stating otherwise, a necessary party to a suit for partition, since the lien is transferred to the interests in severalty allocated to the co-tenants." 59A Am. Jur. 2d Partition § 95 (2003).
 PARTITION
Partition is available in two forms: in kind or by sale. Partition by sale occurs when the property is sold and the proceeds are divided among those with interests in the land. Though a requirement at common law, parties are not required to be co-tenants in order to effectuate a partition. DeLisi v. Caito, 463 A.2d 167 (R.I. 1983) (citing G.L. 1956 §34-15-20 (2004)). Rhode Island courts historically favored partition in kind; that is, physical division of the property by metes and bounds; however, the modern trend is to leave the choice between sale and physical partition to the judge's discretion. DeLisi v. Caito, 463 A.2d 167,169 (R.I. 1983) (citing DeBartolo v. DiBattista, 117 R.I. 349, 367 A.2d 701
(1976)); Matracia v. Matracia, 119 R.I. 431, 437, 378 A.2d 1388, 1391
(1977); Bianchini v. Bianchini, 76 R.I. 30, 34-35, 68 A.2d 59, 62
(1949); cf. Lannon v. Lannon, 40 R.I. 60, 62, 99 A. 819, 820 (1917) (stating preference for physical division of land rather than sale).
"In this state partition is governed by statute." Bianchini,76 R.I. at 33, 68 A.2d at 61 (citing G.L. 1956 § 34-15-2 and § 34-15-16
(1938)). In an action for partition, the Superior Court may, in its discretion, order the whole or any portion of the premises sold. Section34-15-16 (2004); see Bianchini, 76 R.I. at 33-35, 68 A.2d at 61-62
(discussing judge's discretion to partition by sale under statute and holding § 34-15-16 most applicable). The court may also divide any "portion, or tract thereof or the interest of the plaintiff . . . or of the defendant . . . in the whole premises. . . ." Section 34-15-16
(2004). "The intent of the statute is . . . [that] the court may in its discretion order a sale of the property and a division of the proceeds."Bianchini, 76 R.I. at 34, 68 A.2d at 62 (quoting Lannon v. Lannon,40 R.I. 60, 62, 99 A. 819, 820 (1917)).
"All joint tenants . . . who now are or hereafter may be actually seised or possessed of any estate of inheritance in any lands . . . may be compelled to make partition between them of those lands . . . by civil action." Section 34-15-1 (2004). The court also has discretion to determine the set off, or allocation, of the remainder of the estate as between plaintiff and defendant. Section 34-15-15 (2004). "The shares of joint tenants are presumed to be equal although the contrary may be shown." Lucchetti v. Lucchetti, 85 R.I. 105, 111, 127 A.2d 244, 248
(1956).
In her claim for partition, Bissonnette states that she contributed half of the down payment to secure the mortgage for the property. Bissonnette argues that she contributed more than half of all monthly household expenses during the period from 1988 until 1997 by way of a joint bank account. Bissonnette argues that she has in effect subsidized Ventura's ability to live on the premises since 1997. Bissonnette maintains she gained no rent from the property and lacked actual possession or use of it. Additionally, Bissonnette argues that this Court may use its discretion to determine whether to partition the property by sale, and that equity demands it be done, and the proceeds divided equally between Bissonnette and Ventura.
Alternatively, Ventura claims that he made all of the payments with respect to the property and Bissonnette made no contributions to such expenses as mortgage, insurance, taxes, and water and sewer expenses. Ventura argues that Bissonnette is entitled only to a refund of her initial cash outlay of $5,500 that was paid to secure the mortgage, with no interest, costs or attorney's fees.
In Matracia v. Matracia, 119 R.I. 431, 378 A.2d 1388 (1977), the court ordered a partition by sale of property held by a husband and wife. The court found that the petitioner wife obligated herself as joint owner with sufficient consideration by signing a mortgage note and working and pooling her income with her husband's income in order to subsist.Matracia, 119 R.I. at 434-35, 378 A.2d at 1390. Mr. and Mrs. Matracia were found to be joint owners of the property, and the court ordered the proceeds from the partition sale be divided equally. Id. The respondent husband, maintaining that he was entitled to a greater allocation, alleged that the wife had "paid none of the expenses" but rather that he had paid them all. Matracia, 119 R.I. at 437, 378 A.2d at 1391. The determinative factors were the signing of the mortgage note and the pooling of income to share expenses. Id. The court upheld the trial justice's proper exercise of discretion, holding for the petitioner in the amount of one half of the partition sale proceeds. Matracia,119 R.I. at 438, 378 A.2d at 1391.
In the case at bar, Bissonnette and Ventura each contributed to the down payment on the property, and both parties obligated themselves pursuant to the mortgage note on the property. The deed instrument itself explicitly states that Bissonnette and Ventura took title to the property as joint tenants. Ventura alleges that Bissonnette made no contributions to the payment of the mortgage, taxes, insurance, etc. on the property, but rather that Ventura was the one who made those payments. The evidence demonstrates, however, that Bissonnette and Ventura maintained a joint bank account from which some expenses were paid and Bissonnette paid additional expense out of a joint account she had with her mother.
This Court found Bissonnette credible, especially with regard to her testimony concerning money matters and bill paying that occurred between her and Ventura. Accordingly, Bisonnette and Ventura, like the joint tenants in Matracia, were entitled to equal shares of the property or its proceeds. As the subject parties maintained a joint bank account, it is difficult to allocate each person's money and contribution to specific bills. While one party may have paid the mortgage with his income, the other may have purchased food with hers, yet neither party could subsist without either item; therefore, the overlapping and the commingling of monies are presumed. See Matracia, 119 R.I. at 437-38, 378 A.2d at 1391.
This Court finds that Bissonnette and Ventura shared household expenses from 1988 until 1997 when Bissonnette and Ventura parted ways. The evidence presented is sufficient for this Court to find that in 1995 Bissonnette was, on average, earning take home pay (after taxes) of approximately $800-$900 per paycheck, while Ventura was earning take home pay of approximately $200-$300 per paycheck. Such evidence leads this Court to the conclusion that Bissonnette was almost certainly contributing more to household expenses during this period than Ventura was. This Court finds that Bissonnette's contributions to the household and property reach far beyond the down payment she made to secure the mortgage in 1988, and she has a greater interest in the property than that down payment amount.
This Court finds that Bissonnette is co-owner of the property in joint tenancy with Ventura. Because of the nature of the relationship between Bissonnette and Ventura, this Court also finds that a physical division of the property by metes and bounds would be impracticable. Matracia,119 R.I. at 437, 378 A.2d at 1391. Selling the property publicly and dividing the proceeds will likely leave both parties with very little. Bissonnette is left with little, if any, money after appropriate set off is made to Ventura, and Ventura loses his home and has a meager amount of money with which to purchase another. This Court will not work an inequity or hardship upon both parties simply because it would be permissible to order a partition by sale, offering the property at public auction. Instead, this Court, in its discretion, finds a private sale appropriate under these circumstances. Giulietti v. Giulietti, 784 A.2d 905,933-37 (Conn.App. 2001). The statute authorizes this Court to order such a private sale at a fixed price that the court determines. G.L. 1956 §34-15-16.
Under § G.L. 34-15-16, this Court hereby divides "the interest of the plaintiff," which in effect allows the Court to divide, or "partition," the parties' ownership interests rather than the property itself. This Court exercises its equity jurisdiction to grant the most appropriate relief on these facts, and here, a private sale of Bissonnette's interest to Ventura will provide appropriate relief. Giulietti, 784 A.2d at 933-37. Thus, the sale will be a private sale, or "buy out," of Bissonnette's ownership interest to Ventura. Id.; G.L. 1956 § 34-15-16. This Court finds that based on the evidence presented, or lack thereof, the benefits and obligations of each party effectively cancel each other out, thereby negating the need to make any set off to either party. That is, the benefit Bissonnette derived from not contributing to household expenses after 1997 is balanced by the benefit Ventura gained from not paying rents to Bissonnette during his sole occupation or from Bissonnette's contributions to the household from 1988 until 1997.
Equity demands that Bissonnette be compensated for her contributions to the ownership of the property from September 1988 until July 1997, which constitutes 107 months — more than half of the total amount of time the property has been owned. A commissioner shall be appointed to appraise the current value of the property, and to oversee the private sale of Bissonnette's interest to Ventura; but not to actually sell the property to third parties. See G.L. 1956 § 34-15-16; § 34-15-24; § 34-15-25. Once the current value has been determined, the outstanding mortgage balance shall be subtracted from that value. The remaining value shall be divided in half because this Court finds Bissonnette and Ventura share equal, one-half interests in the property as joint tenants. No set off shall be made. Ventura shall pay this final amount to Bissonnette in exchange for a release of Bissonnette's ownership interest. Put differently, Ventura will buy out Bissonnette's ownership interest through a private sale of the interest in the property. G.L. 1956 § 34-15-16. A new deed shall be executed bearing Ventura's but not Bissonnette's name, and Bissonnette's name shall be removed from the mortgage on the property as well. Ventura will be bound to pay the remainder of the mortgage and will then become the sole property owner. See G.L. 1956 § 34-15-28; see also § 34-15-28. Such changes to the mortgage and deed will allow Ventura to maintain his ownership of the property, while discharging the rights and obligations of ownership as to Bissonnette, effectively partitioning or severing the parties' commingled interests once and for all. G.L. 1956 § 34-15-28.
 COMPENSATORY DAMAGE COUNTERCLAIM
Ventura argues that he is entitled to compensatory damages for vandalism to his pickup truck and other costs since Bissonnette's abandonment of the property in 1997. There was no evidence presented to support this contention. Ventura also cannot prevail on his claim for other compensatory damages because they relate solely to his own personal expenditures or to his own personal use of the property subsequent to Bissonnette's moving out. Because the two were no longer sharing living expenses after 1997, Bissonnette had no responsibility to pay for portions of such accounts. Accordingly, Ventura's counterclaim is denied.
 ATTORNEY'S FEES AND COSTS
Bissonnette has sought an award of attorney's fees and costs in the case at bar. Costs may be awarded in partition actions according to G.L. 1956 § 9-22-6 and § 34-15-22. Both statutes are written identically and provide:
 "In all actions of partition, the court before which the action may be pending may adjudge and determine, as to it shall appear equitable and just, relative to the apportionment costs among the parties, plaintiff and defendant, by dividing the costs equally or subjecting either party to the payment of the whole or any part thereof."
§ 9-22-6 and § 34-15-22. Attorney's fees are part of said costs, in addition to the costs of the actual partition and costs of bringing the suit. Francis v. Francis, 81 R.I. 346, 102 A.2d 872 (1954) (citingRedecker v. Bowen, 15 R.I. 52, 23 A. 62 (1885)). "[A] justice of the superior court in his sound discretion may award [equal] counsel fees as a part of the costs assessed in a suit for partition." Barney v. Barney,83 R.I. 182, 185, 114 A.2d 399, 401 (1955) (citing Francis, supra.)). There is nothing that requires a justice to assess costs in proportion to the "fractional interests of the parties, even though ordinarily that would be equitable." Barney, 83 R.I. at 185, 114 A.2d at 401.
Awarding attorney's fees to plaintiffs in partition actions has been allowed when it is unfair to burden them with the cost of "necessary services which inured to the common benefit of all the parties."Francis, 81 R.I. at 349, 102 A.2d at 873 (referencing Redecker, supra.,
and Robinson v. Robinson, 24 R.I. 222, 52 A. 992 (1902)). Similarly it is unfair to require defendants to pay plaintiff's attorney's fees but also their own "where the services presumably were found to have been rendered for the benefit of the estate as a whole." Id. When defendants contest and attempt to defeat an action for partition, counsel would not be working for the common benefit, thereby precluding attorney's fees. Id.
at 350, 873-74.
In the case at bar, this Court finds that Ventura is not entitled to attorney's fees because he sought to defeat the action for partition. Bissonnette should not be penalized for having to bring an action for partition in order to gain her share of the interest in the property, an interest which she did not abandon. This Court, therefore, awards Bissonnette attorney's fees and costs.
 CONCLUSION
For the reasons stated above, this Court finds the property should not be partitioned by sale. In its discretion, this Court finds that equity demands Bissonnette be compensated for the nearly ten years for which she contributed to the ownership of the property, in exchange for a discharge of her name from the mortgage and deed. A partition by private sale of Bissonnette's ownership interest in the property shall be made to Ventura in the amount explained above after valuation by a commissioner, plus attorney's fees and costs.
Counsel shall submit an appropriate order in accordance with this opinion.