# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1767

———————

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Camelot LLC,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Appellee,</td><td>*</td><td>Appeal from the United States</td></tr>
<tr><td></td><td>*</td><td>District Court for the</td></tr>
<tr><td>v.</td><td>*</td><td>District of Minnesota</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>AMC ShowPlace Theatres, Inc.,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Appellant.</td><td>*</td><td></td></tr>
</table>

———————

Submitted: November 17, 2011
Filed: January 18, 2012

———————

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

Camelot LLC brought this action against its tenant AMC ShowPlace Theatres, Inc., seeking a declaration that § 3.4 of their lease is an option to renew if the parties agree on new, negotiated terms rather than an option to extend on the terms contained in their existing lease. The parties filed cross motions for summary judgment, and the district court[1] granted Camelot's motion concluding that § 3.4 created an option to

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

renew rather than an option to extend because the terms of the option period were not reasonably ascertainable from the existing lease. AMC appeals. We affirm.

AMC rents approximately 84,000 square feet from Camelot in the "Block E" shopping mall in downtown Minneapolis under a commercial lease between the parties. The space is now used as a motion picture theater. The lease was negotiated in 2007 by the parties' predecessors and runs until September 2012. Camelot and AMC dispute the nature of their rights after the expiration of the lease. Section 3.4 of the lease, entitled "OPTION TO EXTEND," provides:

> [T]his Lease [will be] extended on the same terms and conditions set forth herein, except that . . . (ii) no Rent concessions, abatements, lease buyouts, tenant allowances or limitations on tax or expense pass-throughs granted with respect to the Lease Term hereof shall be applicable to any Option Period, (iii) Minimum Rent for each Option Period shall be as shown above.

The terms listed in § 3.4(ii) do not refer to other provisions in the existing lease by specific number. Sections 9.9 and 11.1(B) of the lease seem applicable to the language in § 3.4(ii) as they respectively provide for a tenant allowance and an abatement of rent in the case of a casualty. There are no provisions in the lease specifically titled "rent concessions" or "lease buyouts," but the parties suggest that these terms in § 3.4(ii) may relate to §§ 5.3, 6.4, and 13.2. The titles of those sections refer to the payment of percentage rent, the tenant's proportionate share of landlord's operating costs, and the tenant's contribution to promotion and marketing fund. Each of those sections was designated as "Intentionally Omitted" in the lease. As for the reference in § 3.4(ii) to "limitations on tax or expense pass-throughs," § 5.7 of the lease provides a definition of taxes. Section 5.8 is titled "Payment of Tax Rent," but it is also designated as "Intentionally Omitted" in the lease.

Camelot sought a declaratory judgment to determine the meaning of § 3.4. The parties filed cross motions for summary judgment, agreeing both that the lease is unambiguous and that Minnesota law controls. AMC argued that § 3.4 is an option

to extend the lease for five years on the terms outlined in the existing lease and Camelot argued that it is an option to renew the lease which requires negotiations by the parties. The district court concluded that § 3.4 is an option to renew the lease. AMC now appeals that determination.

The district court's determination that § 3.4 of the lease is an option to renew is reviewed de novo. See Maurice Sunderland Architecture, Inc. v. Simon, 5 F.3d 334, 337 (8th Cir. 1993). A lease is a type of contract and unambiguous contract language must be given its plain and ordinary meaning. Metro. Airports Comm'n v. Noble, 763 N.W.2d 639, 645 (Minn. 2009). If terms are clear and unambiguous, a court determines the parties' intent based on the language in the four corners of the document. Halla Nursery, Inc. v. City of Chanhassen, 781 N.W.2d 880, 884 (Minn. 2010). Terms must be read in the context of the entire lease and interpreted to give meaning to all its provisions. Id.

Minnesota courts distinguish between options to renew and options to extend. Med-Care Assocs., Inc. v. Noot, 329 N.W.2d 549, 551 (Minn. 1983). An option to extend continues a lease under the terms outlined in an existing lease whereas an option to renew leaves open the terms in the renewal period and is enforceable only if the parties agree to new terms in writing. Id. An option to extend is enforceable if all necessary and substantial terms applicable to the option periods can be "reasonably ascertained in a manner prescribed in the writing." King v. Dalton Motors, Inc., 109 N.W.2d 51, 52–53 (Minn. 1961). If terms have deliberately been left open, the parties have an option to renew and the terms must be renegotiated for a binding contract to exist. Id. The substance of the option and not its title determines whether it is an option to extend or one to renew. See Med-Care Assocs., Inc., 329 N.W.2d at 552.

AMC argues that § 3.4 creates an enforceable option to extend because the parties' existing lease "Intentionally Omitted" the rent concessions, lease buyouts, or limitations on tax or expense pass throughs in §§ 5.3, 5.8, 6.4, and 13.2. Since the existing lease did not include these provisions, AMC contends they were never

"granted" to AMC and they would be excluded in an option period under § 3.4. AMC further argues that the "tenant allowances" and "abatement" referenced in § 3.4(ii) were granted to AMC under §§ 9.9 and 11.1(B) of the existing lease and thus they would be excluded in the option periods.

Camelot argues that the terms of the option periods are not reasonably ascertainable because the original lease granted AMC "[r]ent concessions . . . lease buyouts . . . or limitations on tax or expense pass-throughs" by "Intentionally Omitt[ing]" AMC's responsibility to pay for these items in §§ 5.3, 5.8, 6.4, and 13.2 of the existing lease. Camelot contends that § 3.4 reflects an understanding that the parties would omit these provisions during the first lease term and then potentially restore them during the option periods. Camelot disputes that the terms of the option periods are reasonably ascertainable because all that § 3.4(ii) requires is that the tenant allowance under § 9.9 and the abatement under § 11.1(B) not be granted to AMC during an option period. According to Camelot, that interpretation renders superfluous the references in § 3.4(ii) to rent concessions, lease buyouts, or limitations on tax or expense pass throughs.

The parties' predecessors negotiated specific terms in drafting the existing five year lease. Section 3.4(ii) directs that the terms of a five year option lease will be the same as the existing lease except that AMC will not receive certain benefits to the extent it was granted those benefits during the existing lease. Section 3.4(ii), however, does not specifically provide which lease provisions must be modified. While the existing lease intentionally omitted certain tenant obligations in §§ 5.3, 5.8, 6.4, and 13.2, there is no indication in the lease that the parties also intended those obligations to be omitted during the option periods. See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc., 470 N.W.2d 118, 125 (Minn. 1991) ("sophisticated parties . . . are accountable for the product of their negotiations."). We agree with the district court that "[w]ithout a formula or other guidance in the language chosen by the parties" the scope of the terms in § 3.4(ii) "cannot be ascertained from the Lease itself."

AMC makes several points in arguing that the terms of the option lease are readily ascertainable, but its interpretation is ultimately undermined by the plain language of the lease. AMC's argument that the only change in the option period would be to exclude the tenant allowance referenced in § 9.9 and the abatement referenced in § 11.1(B) fails because it does not account for the other terms referenced in § 3.4(ii). AMC's contention that the other terms in § 3.4(ii) are irrelevant because they were "Intentionally Omitted" in §§ 5.3, 5.8, 6.4, and 13.2 of the existing lease is similarly problematic because § 3.4(ii) instructs that any "limitations on tax or expense pass-throughs" will not apply to the option periods. The existing lease defines taxes under § 5.7 and then states in § 5.8 that the "Payment of Tax Rent" is "Intentionally Omitted." AMC therefore has no tax rent liability under § 5.8 during the existing lease and that "limit" may not apply to the option period based on the language in § 3.4(ii).

AMC must be required to pay some tax rent during an option period, but it is not possible to ascertain the amount from the existing lease. We conclude that the terms of the option period are not readily ascertainable and that § 3.4 is an option to renew that requires new, negotiated terms.

Camelot and AMC also dispute whether the rent for the option periods is readily ascertainable under § 3.4(iii). Since we have concluded that the terms of the option periods are not readily ascertainable under § 3.4(ii), we need not address whether any other provision of the lease is also indefinite.[2]

Accordingly, the judgment of the district court is affirmed.

_____

---

[2]On appeal Camelot moved to strike four pages of AMC's appendix which it contends are improper because they were never submitted to the district court and are inappropriate extrinsic evidence. We do not rely on these materials in construing the lease and deny Camelot's motion to strike as moot.