**OHIO CALCULATING, INC., Appellant,**

v.

**CPT CORPORATION, Appellee.**

**OHIO CALCULATING, INC., Appellee,**

v.

**CPT CORPORATION, Appellant.**

Nos. 87–5217, 87–5225.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1987.

Decided May 10, 1988.

Rehearing Denied June 21, 1988.

Richard T. Thomson, Minneapolis, Minn., for appellant.

Mark P. Friedlander, Jr., Arlington, Va., for appellee.

Before LAY, Chief Judge, HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

## I. Background

Ohio Calculating, Inc., a seller and servicer of office equipment, was a dealer for CPT Corporation, a manufacturer of word processing equipment, from 1976 until 1982, when CPT terminated Ohio Calculating. After the termination, Ohio Calculating sued CPT for breach of their Dealer Agreement. A jury returned a verdict for Ohio Calculating, finding that CPT breached the following provisions of the Agreement:

(1) ¶ 2.1, requiring CPT to establish fair and equitable dealer performance standards;

(2) ¶ 2.7, requiring CPT to act in a fair and equitable manner after termination and to provide a review of the termination by a review board; and

(3) ¶ 10.8, requiring CPT to negotiate with Ohio Calculating after the termination with respect to the purchase of Ohio Calculating's business.

The jury also found that CPT breached ¶ 8.7, but this provision is not at issue on appeal because CPT concedes its liability.[1] Finally, the jury found that CPT did not breach ¶ 2.5 of the Dealer Agreement, which gave CPT the right to terminate the Agreement if Ohio Calculating substantially failed to meet sales or service standards.[2]

The jury determined that the total damages caused by CPT's breach of ¶¶ 2.1, 2.7, and 8.7 were $141,820. The verdict form

---

1. Paragraph 8.7 provides:
   Prior to such termination date, CPT may, at its option, or shall, at the request of Dealer, repurchase all or any part of the remaining current new inventory of CPT Products then held by Dealer. CPT shall not be required to purchase any of Dealer's reconditioned or obsolete inventory. Inventory shall be repurchased at the prevailing prices to CPT dealers at the time of termination less (i) shipping costs to Minneapolis, and (ii) depreciation computed on a straight-line, five-year schedule.

2. Paragraph 2.5 provides:
   Dealer acknowledges the importance of sales and service standards to CPT, other CPT dealers and customers of CPT Products. If Dealers substantially fails to meet sales or service standards set by CPT during any 12–month period of this Agreement, CPT has the right to terminate this Agreement upon ninety (90) days written notice to Dealer. Substantial failure with respect to sales standards will be determined by computing the percentage of Dealer's sales revenue against Dealer's sales quota and comparing such percentage against the average percentage of sales revenue achieved against sales quotas during a like period of time by all domestic CPT dealers and branches.

did not direct the jury to apportion these damages. The verdict form did require the jury to determine a specific amount of damages caused by CPT's breach of ¶ 10.8; the jury set this award at $28,500.

After the jury returned its verdict, the district court[3] entered judgment n.o.v. for CPT on two of the jury's findings. The court set aside the jury verdict for CPT's breach of ¶ 2.1, which provides:

> Fair and equitable standards of Dealer performance will be established by CPT on the basis of actual manufacture and sales of CPT Products, the potential of the Area of Primary Responsibility, and any special circumstances of Dealer and Dealer's Area of Primary Responsibility. Performance standards and sales quotas have been or will be sent to Dealer by CPT and will be updated annually by CPT.

The trial court reasoned that Ohio Calculating introduced no evidence of recoverable damages suffered as a result of that breach.

The court further set aside the verdict in favor of Ohio Calculating for CPT's breach of ¶ 2.7, which provides:

> In the event of the nonrenewal or termination of this Agreement (for substantial failure to meet sales and service standards, or for any other reason described in Article VIII), CPT and Dealer shall act in a fair, equitable and ethical manner. Dealer shall have the right to submit such nonrenewal or termination for review by a CPT Review Board consisting of three officers from CPT senior management, none of whom shall have been involved in the initial recommendation of termination or nonrenewal. In any review by the Review Board and in any legal proceeding arising out of this Agreement, the burden of proof shall be

upon CPT. Violations of law, CPT corporate policy (as set forth in CPT's Dealer Administrative Manual) or this Agreement which are clearly defined and documented will not require the consultation of the Review Board. However, a report documenting specific violations will be provided to each member of the Review Board as a matter of record.

The trial court reasoned that the exculpatory clause in ¶ 8.9 of the Dealer Agreement barred Ohio Calculating's recovery under ¶¶ 2.1 and 2.7. Ohio Calculating appeals from the judgment n.o.v. entered for CPT on these two counts.[4] Finally, the district court upheld the jury's verdict that CPT breached ¶ 10.8; CPT cross-appeals from this judgment.

## II. Discussion

### A. Ohio Calculating's Appeal

The district court's grant of judgment n.o.v. in favor of CPT was based primarily on the exculpatory terms of the Dealer Agreement between Ohio Calculating and CPT. Paragraph 8.9 provides:

> Termination shall not result in CPT liability to Dealer in any manner for any damage, loss, or expense of any kind, all of which claims are expressly waived. After the date of termination, no commissions shall be due to Dealer for rental payments received thereafter or for subsequent conversion sales of CPT Products.

The district court held that this clause precluded Ohio Calculating from recovering for CPT's breaches of ¶¶ 2.1 and 2.7 because any damages suffered by Ohio Calculating due to those breaches "resulted from" termination and were therefore unrecoverable under the unambiguous terms of ¶ 8.9.[5]

---

3. The Honorable Robert G. Renner, United States District Judge for the District of Minnesota.

4. The j.n.o.v. entered for CPT with respect to ¶¶ 2.1 and 2.7 necessitated a determination of the damages appropriate for CPT's breach of ¶ 8.7 alone. The special master the district court appointed for this purpose set the dam-

ages for CPT's breach of ¶ 8.7 at $20,135.53. This award is not at issue here.

5. That this was the district court's holding with respect to ¶ 2.1 is not entirely clear. In ruling on CPT's motion for j.n.o.v., the district court stated:

> [Ohio Calculating] cannot recover damages for breach of paragraph 2.1. Throughout the trial, the only damages evidence Ohio Calcu-

Ohio Calculating urges three grounds in support of its argument that the exculpatory clause does not preclude recovery for CPT's breach of ¶¶ 2.1 and 2.7: the clause is inapplicable; the clause is unenforceable because ambiguous; and the clause is unenforceable because it denies Ohio Calculating a minimum adequate recovery. We find Ohio Calculating's first argument to be dispositive and therefore do not address its remaining contentions.

By its terms, ¶ 8.9 provides only that *"[t]ermination* shall not result in CPT liability * * *."* (emphasis added). In contrast, the breaches at issue here involved pre-termination and post-termination conduct by CPT. The jury determined, and the district court agreed, that prior to terminating Ohio Calculating, CPT had set unduly and inequitably high performance standards for Ohio Calculating. This conduct would have breached ¶ 2.1 of the parties' agreement even if CPT had not terminated Ohio Calculating. Similarly, CPT's breach of ¶ 2.7 was its failure to fulfill certain *post*-termination obligations. It is irrelevant that the damages that accrued to Ohio Calculating from CPT's breaches accrued after termination, because ¶ 8.9 precludes only liability resulting from termination, not all damages caused by *any* of CPT's conduct. To interpret the clause as urged by CPT would be to reconstruct it to read that after CPT terminates Ohio Calculating, CPT shall not be liable for any damages caused by its termination *or* by its pre- or post-termination conduct. This interpretation is clearly at odds with the language of the totality of the parties' agreement and we decline to so distort its meaning. We therefore hold that the exculpatory clause is inapplicable and does not bar Ohio Calculating from recovering for CPT's breaches of ¶¶ 2.1 and 2.7. We reverse the judgment n.o.v. for CPT and remand for reinstatement of the jury's verdict.

In doing so, we reject, as did the district court, CPT's argument that another portion of the Dealer Agreement bars Ohio Calculating's recovery. CPT points to ¶ 10.9 of the Agreement, which provides that:

Neither Dealer nor CPT shall be liable for any failure or delay in performance of any obligation under this Agreement if such failure or delay is caused by circumstances not directly under the control of the party concerned, including without limitation, failures resulting from force majeure, acts of God, acts of public authorities, wars and war measures, strikes, fires, or failures or delays of suppliers or carriers. *In no event shall either party to this Agreement be liable to the other for indirect, special, consequential damages or for loss of anticipated profits.*

(emphasis added). CPT contends that the second sentence of this paragraph, which is contained in a portion of the Agreement entitled "General Provisions," was intended by the parties to preclude recovery of the specified types of damages regardless of the cause of the damages. The district court held, however, that the remedy limitation contained in the second sentence applies only to damages caused by acts of God or by the other contingencies specified in the first sentence of ¶ 10.9. We agree.

To separate the second sentence of the paragraph from the first sentence is inconsistent both with principles of contract interpretation and with the Agreement as a whole. Each of the paragraphs contained in Article X of the Agreement—"General Provisions"—deals with a single topic. Paragraph 10.9 likewise must be construed as dealing with one topic—liability and damages for injuries caused by force majeure. Moreover, to read ¶ 10.9's second sentence as applying beyond the bounds of that paragraph renders other limitations of remedy in the Agreement meaningless. As Ohio Calculating points out, contracts must

---

lating offered consisted of losses suffered because of termination. Ohio Calculating has introduced no evidence of damages suffered from an independent breach of ¶ 2.1. CPT's failure to establish equitable sale [sic] quotas, in itself, caused [Ohio Calculating] no damage.

*Ohio Calculating, Inc. v. CPT Corporation,* No. 3–84–1289, slip op. at 5 (D.Minn. Feb. 4, 1986). Although not entirely free from doubt, we assume that the district court meant that because the damages caused by CPT's breach of ¶ 2.1 were "because of termination," ¶ 8.9 barred Ohio Calculating's recovery.

be construed if at all possible to give effect to each of their parts. *See, e.g., Medtronic, Inc. v. Catalyst Research Corp.,* 518 F.Supp. 946, 951 (D.Minn.), *aff'd,* 664 F.2d 660 (8th Cir.1981). For these reasons, we affirm the district court's holding that ¶ 10.9 does not bar Ohio Calculating from recovering for CPT's breaches of ¶¶ 2.1 and 2.7.

### B. CPT's Appeal

■ In its cross appeal, CPT argues that the district court erred in upholding the jury's verdict that CPT breached ¶ 10.8 of the Dealer Agreement. We agree. Paragraph 10.8 provides:

> In the event (i) the business of CPT is acquired, (ii) Dealer is terminated by CPT other than pursuant to Sections 8.3 or 8.4 or because of violations of Articles V or VII, or (iii) CPT should desire to purchase the business of Dealer (other than pursuant to its rights under Section 10.-2), CPT (or its successor) will enter into negotiations with Dealer with respect to the purchase of Dealer's business. Dealer may request the engagement of a professional appraisal firm to be agreed upon by Dealer and CPT which will evaluate the business, local market conditions, existing sales and service agreements of Dealer and arrive at an estimated "market value" of Dealer's business. Such market value shall not be binding but shall serve as a basis for good faith negotiations between Dealer and CPT as to the price to be paid by CPT to Dealer. The fees and expenses of such appraisal firm shall be born equally by CPT and Dealer.

We hold that this paragraph constitutes an unenforceable and unremediable agreement to negotiate and therefore reverse the judgment entered for Ohio Calculating with respect to ¶ 10.8.

Under the applicable Minnesota law, "[i]t is a fundamental rule * * * that an alleged contract which is so vague, indefinite, and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable." *King v. Dalton Motors, Inc.,* 260 Minn. 124, 126, 109 N.W.2d 51, 52 (1961). Although the Minnesota courts apparently have not considered the precise issue of enforceability of agreements to negotiate, in a recent case the Minnesota Court of Appeals held that an agreement to agree—similar although not identical to an agreement to negotiate—was so indefinite and ambiguous as to be unenforceable. *See First Trust Co. v. Holt,* 361 N.W.2d 476, 479 (Minn.Ct.App. 1985); *see also Lake Minnetonka Homes, Inc. v. Sidwell,* 412 N.W.2d 360, 364 (Minn. Ct.App.1987) (indefiniteness of renegotiation clause necessitated rescission of contract for deed) (rev. granted Nov. 18, 1987). Accordingly, we are convinced that the Minnesota courts would follow the vast weight of authority [6] and hold that agreements to negotiate like the provision at issue here are unenforceable.

Such agreements generally are deemed unenforceable because they provide neither a basis for determining the existence of a breach nor for giving an appropriate remedy. For instance, in *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966), the Second Circuit discussed the enforceability of a contractual provision stating that the parties would "examine the possibility" of extending a distributorship agreement. The court stated:

> This paragraph, however, does not impose an obligation on Necchi to grant a renewal of the distributorship and it is impossible to say what relief would be appropriate if Necchi failed to examine the possibility of a renewal. Certainly, we cannot ask that a renewal contract be written for the parties, as it is altogether too conjectural that the parties would

---

**6.** *See, e.g., Candid Productions, Inc. v. International Skating Union,* 530 F.Supp. 1330, 1333–35 (S.D.N.Y.1982); *Griffin v. Griffin,* 699 P.2d 407, 409 (Colo.1985) (en banc); *First National Bank v. Burton, Parsons & Co., Inc.,* 57 Md.App. 437, 448, 470 A.2d 822, 828 (Ct.Spec.App.), *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984); *Jenks v. Jenks,* 385 S.W.2d 370, 376 (Mo.App.1964); *Kay v. Professional Realty Corp.,* 222 Va. 348, 281 S.E.2d 820, 822 (1981).

have agreed and on what terms. It is impossible to assess any damages, as there is no way that anyone could forsee what would have come from examining the possibility of executing a new contract, even if this were done in the utmost good faith.

*Id.* at 698; *see also* Restatement (Second) of Contracts § 33(2) (1979).

As in *Necchi*, it is impossible for this court or a jury to determine what would have happened had Ohio Calculating and CPT negotiated "with respect to the purchase of [Ohio Calculating's] business." A damages award based upon the parties' failure to reach an agreement on the sale of the business is thus entirely speculative and cannot stand.

III. Conclusion

We reverse the judgment n.o.v. for CPT on the claims involving ¶¶ 2.1 and 2.7 of the Agreement and remand for reinstatement of the jury's verdict.[7] We also reverse the judgment entered on the jury's verdict pertaining to ¶ 10.8 and remand for entry of judgment n.o.v. for CPT. The parties will bear their own costs on appeal.

---

7. The jury's award of $141,820 for the combined breaches of ¶¶ 2.1, 2.7, and 8.7 should be reduced by the amount of damages the special master set as appropriate for CPT's breach of ¶ 8.7 alone.