Edward NORTHWAY, et al., Appellants,

v.

Jean S. WHITING, as Executor of the
Estate of James G. Whiting,
Respondent.

No. C2–88–2088.

Court of Appeals of Minnesota.

March 7, 1989.

Donald J. Brown, Joseph C. Nauman, Winthrop & Weinstine, St. Paul, for appellants.

Paul G. Neimann, Mitchell H. Cox, Moss & Barnett, P.A., Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and MULALLY,* JJ.

## OPINION

FORSBERG, Judge.

Appellants Edward Northway and Jean Stiegemeier seek reversal of the trial court's summary judgment on the failure to satisfy the statute of frauds on the contract claim. Respondent Jean S. Whiting, as Executor of the Estate of James G. Whiting, seeks reversal of the denial of the motion for attorney fees, costs, and disbursements. We affirm.

## FACTS

In August or September 1985, appellants discussed the possibility of buying the Nisswa State Bank. Appellant Northway in November or December 1985 then contacted James Whiting ("Whiting") as majority shareholder to arrange a meeting with him so they could discuss the possibility of buying the bank. The initial meeting was held in Nisswa and Whiting disclosed his stock holdings in the bank and suggested payment terms in the event of a sale. At a second meeting, Whiting indicated the "classified" (higher risk) loans would be under $100,000 at the next examination.

After the meeting, Whiting received a letter dated January 10, 1986. Some changes were made, and the letter was retyped with the same date and signed by Whiting. There were several conditions precedent as part of appellants' offer in-cluding that (1) on the closing date the classified loans would not exceed $100,000 and the capital would not be less than present capital, (2) the parties would enter into a definitive stock purchase agreement with standard representations and warranties, and (3) appellants would review and approve the loan portfolio.

Appellants had their banking expert examine the bank's loan portfolio on approximately January 16, 1986. The examination showed the classified loans were closer to $1,000,000 than $100,000. As a result, the parties negotiated the issue of who should be liable for the classified loans that would be required to be written off or written down after the sale.

Appellants state that Whiting agreed to guarantee the post-sale loan losses up to the amount of the note due him from appellants. They contend this agreement was reached at a meeting of the parties prior to May 23, 1986, when appellants' counsel sent a letter to Whiting. Whiting disputes agreeing to the loan guarantee/note setoff provisions. He claimed that he expressed his inability to agree to the terms of the stock purchase agreement which accompanied a July 1, 1986 letter from appellants' counsel. Whiting claimed there was a meeting sometime during July 7 to 10, 1986, at which he told appellants he could not agree to the terms of the stock purchase agreement. Whiting stated there was a second meeting on approximately July 18 or 19, 1986, at which he indicated he was not in accord with the provisions of the proposed stock purchase agreement, in particular the loan guarantee.

The parties agree there was at least one meeting after appellants' counsel mailed the July 1, 1986 letter and stock purchase agreement to Whiting. Appellant Northway in his deposition indicated that appellants went to the bank to sign the stock purchase agreement in July (1986), and that after some small talk Whiting announced "Our deal is off. It's not going to go."

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

According to Whiting, at the July 18 or 19 meeting appellants tried to force him to sign the stock purchase agreement. He said he would not sign it, was threatened with a lawsuit, and concluded he would not be comfortable continuing discussion.

Appellants brought suit in August 1986 requesting specific performance for breach of contract for the sale of securities and for damages for fraud and misrepresentation. Whiting's motion for summary judgment was granted in June 1987 on the breach of contract claim based on appellants' failure to satisfy the statute of frauds, but denied as to the fraud claim. Appellants moved and were granted a motion to dismiss their fraud and misrepresentation claim.

Respondent moved for an award of costs, disbursements, and attorney fees, which was denied in September 1988.

## ISSUES

1. Did the trial court err in granting Whiting's motion for summary judgment based on the statute of frauds?

2. Did the trial court abuse its discretion in denying respondent's motion for attorney fees under Minn.Stat. § 549.21, subd. 2?

## ANALYSIS

In reviewing a grant of summary judgment, an appellate court must determine whether there are any genuine issues of material fact and whether trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The evidence is viewed in the light most favorable to the party who lost the motion below. *Franklin Auto Body Co. v. Wicker*, 414 N.W.2d 509, 511 (Minn.Ct.App.1987).

1. Even if appellants could show satisfaction of one of the alternative provisions under Minn.Stat. § 336.8–319 (1986) for statute of frauds purposes, they would still have the burden of proving the existence of an enforceable contract for the sale of securities. Respondent asserts that if appellants are not precluded from enforcing the

contract by the statute of frauds, the contract is still not enforceable because the parties made the execution of a "definitive stock purchase agreement with standard representations and warranties" a condition precedent for the contract.

■ Appellants argue that whether the contract is unenforceable for reasons other than the statute of frauds is not an issue properly before this court. However, we may affirm a summary judgment if there are no genuine issues of material fact and if the decision is correct on other grounds. *Braaten v. Midwest Farm Shows*, 360 N.W.2d 455, 457 (Minn.Ct.App.1985) (summary judgment based in part on failure to satisfy statute of frauds affirmed on other grounds).

■ In the January 10, 1986 letter, which the parties' attorneys signed, appellants' offer was contingent upon, *inter alia*, "entering into a definitive stock purchase agreement with standard representations and warranties." Respondent asserts that this clause means the parties made the "execution" of a definitive stock purchase agreement a condition precedent. The construction of the terms "entering into a definitive stock purchase agreement" could arguably mean either agreeing orally or in writing.

In the July 1, 1986 letter appellants' attorney stated with reference to the stock purchase agreements:

> Section 7 dealing with representations and warranties is quite lengthy, but is a good checklist to make sure that all items are covered. Certainly it is beneficial from both sides of the transaction to make sure that full and complete disclosure is made *prior to the entering into of this agreement.*

(Emphasis added.) This letter was drafted after the date which appellants claim Whiting agreed to sell them the bank stock on their terms. The emphasized language shows that appellants believed the stock purchase agreement had not yet been "entered into" because it had not been duly executed by the parties. The nature of the transaction, the length and detail of the

stock purchase document, the designated spaces for signatures on the document, and the blank space for the effective date of the transfer also suggest that appellants considered "entering into" to mean the execution of a written stock purchase agreement. Moreover, in their brief on appeal, appellants interpret "entering into a definitive stock purchase agreement" as meaning " * * * the *execution* by the parties of a definitive stock purchase agreement * * *." (Emphasis added.)

There is thus very little doubt that the parties intended "entering into a definitive stock purchase agreement" to mean execution of such a document. All the parties intended the agreement not to be binding until the execution of a stock purchase agreement.

It is well settled that no contract is formed "where two parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes the document." 1 A. Corbin, Contracts § 30 at 97 (1973 ed.). * * * We hold that the statements of the defendants have raised no genuine issue of the existence of a contract under [the applicable state's version of the statute of frauds] and that the district court therefore properly entered summary judgment against the plaintiffs on their contract claim.

*Gruen Industries, Inc. v. Biller,* 608 F.2d 274, 280 (7th Cir.1979); *see also Dataserv Equipment, Inc. v. Technology Finance Leasing Corp.,* 364 N.W.2d 838, 841 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. May 31, 1985) ("[w]hen the parties know that the execution of a written contract was a condition precedent to their being bound, there can be no binding contract until the written agreement was executed"). Since the parties agreed on the condition precedent of "entering into" a definitive stock purchase agreement, and since this condition was not met, the contract was not binding.

■ Finally, we do not believe that the language just above Whiting's signature on the January 10, 1986 letter (in which he states he "will enter into a definitive stock purchase agreement containing standard representations and warranties") operates as a waiver of the condition precedent. If it did, there would be no purpose in having stated the condition precedent of "entering into the definitive stock purchase agreement." Moreover, the conditions precedent, including the condition of "entering into a definitive stock purchase agreement," were renewed in the May 23, 1986 letter. Based on the unsatisfied condition precedent of the execution of a definitive stock purchase agreement, there was no binding contract between the parties. Though the parties dispute whether there was an agreement to sell the stock, this would not be an issue of material fact preclusive of summary judgment if the contract was not binding due to an unsatisfied condition precedent.

■ 2. Minn.Stat. § 549.21, subd. 2 (1986) provides that

[t]he court in its discretion may award to [a] party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

A reviewing court will not reverse the order of the trial court denying attorney fees unless there was an abuse of discretion. *Becker v. Alloy Hardfacing & Engineering Co.,* 401 N.W.2d 655, 661 (Minn. 1987). In its order, the trial court denied respondent's motion for attorney fees because it found "[respondent] has failed to establish that the prosecution of this action was conducted in bad faith * * *." In *Becker,* the case was remanded to the trial court to supply a rationale. *Id.* at 661. In this case the trial court seems to be saying that the evidence to establish bad faith was

insufficient for respondent to meet her burden. If the trial court's articulation of its reason for denying the request for attorney fees is considered adequate for purposes of review, there has not been an abuse of discretion by the trial court.

First, appellants' claims have been supported by authority, when available from this jurisdiction, and from other competent authority when no Minnesota authority was available.

Second, regarding the statute of frauds defense, appellants have a strong argument that they satisfied the requirements of Minn.Stat. § 336.8–319(c). Their other arguments while perhaps not persuasive cannot be considered frivolous or in bad faith. In support of their other statute of frauds arguments, appellants used cases involving other sections of the Uniform Commercial Code to interpret the statute of frauds provisions of the code, a practice authorized by other authorities. *See Tipton v. Woodbury*, 616 F.2d 170, 177 (5th Cir.1980).

Third, respondent asserts that appellants' action was frivolous because it was clear that several conditions precedent had not been met, in particular the execution of a definitive stock purchase agreement. However, as noted above, the actual language of the January 10, 1986 letter in which the conditions precedent were recited, the term "execution" does not appear, giving rise to a colorable argument that an oral stock purchase agreement would have satisfied the "entering into" language.

Fourth, with regard to the fraud claim, respondent asserts the timing of appellants' claim of fraud shows an intent to delay the proceedings. However, the record contains evidence that Whiting made a representation about the amount of unclassified loans that was not supported by the subsequent audits of the bank. Whether Whiting intentionally or negligently misrepresented the facts was determined to be a fact issue preclusive of summary judgment by the trial court.

A review of the record does not indicate the trial court abused its discretion in denying respondent's request for attorney fees.

## DECISION

The trial court did not err in granting summary judgment for respondent because there was no binding contract between the parties due to the unsatisfied condition precedent. The trial court did not abuse its discretion in denying respondent's motion for attorney fees, costs, and disbursements.

AFFIRMED.