Robert L. HANSEN, et al., Appellants,

v.

.PHILLIPS BEVERAGE CO.,
et al., Respondents.

No. C2–92–328.

Court of Appeals of Minnesota.

Aug. 18, 1992.

Paul C. Sprenger, Jean M. Boler, Thomas L. Garrity, Barnett I. Rosenfield, Sprenger & Lang, Minneapolis, Jane Lang, Timothy B. Fleming, Sprenger & Lang, Washington, D.C., for appellants.

James L. Harlow, Kevin D. Conneely, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and NORTON and PETERSON, JJ.

## OPINION

DAVIES, Judge.

On appeal from a summary judgment, appellants challenge the trial court's determination that no enforceable contract existed based upon a letter of intent signed by the parties. Appellants also assert the trial court improperly dismissed their claims for tortious interference with contract, conspiracy to breach a contract, and fraud. We disagree and affirm.

## FACTS

Phillips Beverage, a Minnesota corporation, employs Edward Phillips, Michael Berns, and Thomas Adamson as corporate officers. Phillips Beverage owns a subsidi-

ary corporation which in turn owned Phillips of North Dakota, Inc. (Phillips North Dakota), a corporation which was engaged in the business of selling liquors, wines, and paper supplies to retailers in the state of North Dakota. At the time this action was commenced, appellant Robert Hansen was president of Phillips North Dakota. Appellant Timothy Zastoupil had been president before Hansen.

In May 1990, Phillips Beverage notified appellants that Phillips North Dakota was for sale. Phillips Beverage assigned Berns and Adamson the responsibility of selling Phillips North Dakota. On or around August 8, 1990, the parties prepared and signed a "Letter of Intent" dated July 26, 1990.

Paragraph IX of the letter of intent, entitled "Non-Binding Offer," provides:

This Letter of Intent shall not be a binding legal agreement, and neither party shall have any liability to the other until the execution of the definitive purchase agreement. It is understood (1) that this Letter of Intent is intended as, and shall be construed only as, a Letter of Intent summarizing and evidencing the discussions between Seller and Purchasers to the date hereof and not as an offer to purchase the Assets of Seller or an agreement with respect thereto, and (2) that the respective rights and obligations of Seller and Purchasers remain to be defined in the definitive purchase agreement into which this Letter of Intent and all prior discussions shall merge. Upon execution of this Letter of Intent, the parties hereto agree to terminate negotiations with other prospective purchasers of the Assets and work diligently toward finalization of the definitive purchaser agreement.

Appellants indicated in their affidavits that after signing the agreement, they took steps to carry out the agreement to purchase Phillips North Dakota. They retained an attorney and consultant, sought investors to purchase capital, and negotiated with banks to obtain financing.

In September 1990, Berns and Adamson discovered that Jim Beam Brands Co. (Beam), which was one of Phillips North Dakota's largest suppliers, did not approve of appellants as distributors of Beam products in North Dakota. As soon as respondents discovered this, Berns orally advised Hansen and Zastoupil that Beam would not approve them as distributors. Then, on October 1, 1990, Phillips Beverage sent appellants a letter stating that the transaction described in the letter of intent would not be possible and thus, the letter of intent was null and void.

Appellants claim that respondents broke the promise contained in the final sentence quoted above by negotiating with other prospective purchasers as early as one day after respondents agreed in the letter of intent to sell Phillips North Dakota to appellants. Respondents, on the other hand, claim they did not actively pursue negotiations with other potential purchasers until Adamson and Berns learned that Beam would not approve appellants as distributors of Beam products.

Appellants commenced this suit in May 1991, claiming breach of contract against Phillips Beverage, fraud against Phillips Beverage and Mr. Phillips, tortious interference with contract against Berns and Adamson, and civil conspiracy against all of the respondents.

## ISSUES

1. Did an enforceable contract exist based upon the signed letter of intent?

2. Did appellants' claims of tortious interference with contract, conspiracy to breach a contract, and fraud all fail as a matter of law?

## ANALYSIS

### I.

On appeal from a grant of summary judgment, we determine whether any genuine issues of material fact exist and wheth-

er the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). We view the evidence in the light most favorable to the nonmoving party, but need not defer to the trial court's application of the law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Util. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

■ No contract is formed by the signing of an instrument when one party knows the other does not intend to be bound by the document. *Hamilton v. Boyce,* 234 Minn. 290, 292, 48 N.W.2d 172, 174 (1951). No contract exists in this case where the parties have, by their letter of intent, clearly indicated an intent not to be bound. Paragraph IX of the letter is entitled "Non–Binding Offer" and states that the letter "shall not be a binding legal agreement, and neither party shall have any liability to the other until the execution of the definitive purchase agreement."

This letter creates merely an agreement to negotiate in good faith. Under Minnesota law, such an agreement is unenforceable where the agreement evidences nothing more than an intention to negotiate in the future. *Consolidated Grain & Barge Co. v. Madgett,* 928 F.2d 816, 817–18 (8th Cir. 1991) (citing *Ohio Calculating, Inc. v. C.P.T. Corp.,* 846 F.2d 497 (8th Cir.1988) (contract to enter into negotiations in the future is unenforceable under Minnesota law)).

Paragraph IX of the letter of intent specifically provides that the letter shall be construed as merely summarizing and evidencing the discussions between the sellers and purchasers, and not as an offer or an agreement to purchase the assets of the company. That provision further states that the rights and obligations of the parties were yet to be determined in a defini-

tive purchase agreement "into which this letter of intent and all prior discussions shall merge." This language indicates that both parties understood that the letter of intent was not binding and they were agreeing to pursue a future contract.

It is well settled that no contract exists

> where two parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes the document.

*Northway v. Whiting,* 436 N.W.2d 796, 799 (Minn.App.1989) (quoting 1 A. Corbin, *Contracts,* § 30 at 97 (1973 ed.)). Here, we do not construe the letter of intent as a binding contract.

■ Appellants claim that a separate contract was formed based upon language in the letter of intent which states that the parties "agreed to terminate negotiations with other prospective purchasers of the assets and work diligently toward finalization of the definitive purchase agreement." They claim this freestanding "contract" promise was breached. Paragraph IX states, however, that the letter of intent shall not be a binding legal agreement. This paragraph applies to the entire document and no separate contract rights arise based upon a separate sentence contained in the same paragraph as the clear disclaimer.[1]

## II.

■ Because no contract exists, the trial court properly dismissed appellants' claims of tortious interference with contract and conspiracy to breach a contract. *See Stephenson v. Plastics Corp. of Am.,* 276 Minn. 400, 416, 150 N.W.2d 668, 679 (1967)

---

1. Appellants, apparently for tactical reasons, did not argue promissory estoppel as another basis for relief. We note any recovery for promissory estoppel would have been limited to reliance damages. We do not reject promissory estoppel liability on these facts. We decline, however, to

address this case on that basis now because it was not raised at trial. *See Flooring Removal, Inc. v. Ryerson,* 447 N.W.2d 429, 430 (Minn. 1989) (this court should not consider the issue of promissory estoppel which was not pleaded or addressed by the district court below).

(a contract must exist in order to satisfy a claim for tortious interference with contract). Moreover, appellants' fraud claim fails because they have not satisfied the element of justifiable reliance. *See Davis v. Re-Trac Mfg. Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967) (delineating elements of fraud). Because appellants failed to establish an essential element of each of these claims, summary judgment was appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## DECISION

We hold that the parties were not bound contractually by the letter of intent which expressly disclaimed any contract liability. The disclaimer applied to the entire letter and no contract arose from an individual sentence indicating agreement.

Affirmed.