Gary **MOHRENWEISER** & Greg
Mohrenweiser, d/b/a G & G
Partnership, Respondents,

v.

Mavis **BLOMER**, Respondent,

Paul Blomer, Respondent,

Gordon F. Stalker, et al., defendants and
cross-claim plaintiffs, Appellants.

No. CX–97–1231.

Court of Appeals of Minnesota.

Jan. 6, 1998.

Review Denied Feb. 19, 1998.

Neil C. Franz, Neils, Franz & Chirhart, P.A., St. Cloud, for respondents Mohrenweiser.

Mavis (Blomer) Rule, Isle, pro se.

Paul E. Blomer, Onamia, pro se.

John E. Simonett, William J. Everett, Greene Espel, P.L.L.P., Minneapolis, for appellants.

Considered and decided by TOUSSAINT, C.J., and RANDALL and FOLEY, JJ.

**OPINION**

DANIEL F. FOLEY*, Judge.

Appellants contend the trial court erroneously allowed the jury to determine the en-

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

forceability of a contract that was unenforceable as a matter of law. We agree and reverse.

## FACTS

This case arose out of two agreements to purchase the Blomer farm. Respondents Mavis and Paul Blomer owned a 160–acre farm in Mille Lacs County. In 1993, the Blomers approached their neighbors, appellants Gordon and Lynn Stalker, about purchasing Blomers' farm. The Stalkers expressed interest.

Mavis Blomer contacted her local realtor, who drafted a purchase agreement for the $30,000 transaction on June 7, 1993. The Stalkers and Mavis Blomer signed the agreement, but Paul Blomer withheld signature because he felt the purchase price was too low. By December 10, 1993, the purchase price had increased to $40,000. The realtor drafted a new purchase agreement, which the Stalkers signed. On January 10, 1994, Mavis Blomer told the Stalkers that their offer on the farm was acceptable and they could go ahead and order supplies for farming the land. She also indicated that Paul still needed more time to sign the purchase agreement. On February 23, 1994, the Blomers informed the realtor that the purchase agreement was fully signed. The realtor picked up the purchase agreement and sent a copy to the Stalkers, whereupon they surveyed the land and contacted an attorney to examine the title and the agreement.

While these negotiations were proceeding, the Blomers were simultaneously negotiating the sale of the farm with their neighbors, respondents Gary and Greg Mohrenweiser, doing business as G & G Partnership (G & G). G & G had mentioned buying the Blomer farm three or four times over the years. On February 6, 1994, when Mavis Blomer was at the Mohrenweiser farm, G & G made an offer to purchase the farm for $25,000. On February 13, 1994, G & G made a quick visit to the Blomers' farm and presented them with a letter of agreement, which contained G & G's proposal for the purchase of the farm. The Blomers and G & G signed the document. This document "outlined" the terms of the future purchase of the farm,

providing that G & G would purchase the 160 acres for $150 per acre ($24,000) over the next 10 years, provide the Blomers with one Holstein calf every June 1 for 10 years, and provide 10 bales of hay per year. The document stated the parties "agree to proceed forward with a formal agreement."

Based on that letter of agreement, G & G called the Stalkers on March 16, 1994, as they prepared for the closing on the farm purchase, and informed them that G & G also had an agreement to purchase Blomers' farm. When the Stalkers called the Blomers for an explanation, the Blomers denied that they had any agreement to sell to G & G. When the realtor pressed the Blomers further in person, Mavis Bloomer said they had never signed a purchase agreement with G & G, but she did show the realtor a letter she had received from G & G. The Stalkers also received a copy of the letter. The Stalkers proceeded with the closing because they were not aware of any written contract or agreement the Blomers had signed with G & G. The Blomers and the Stalkers executed a contract for deed at the closing on March 23, 1994. The Stalkers paid a down payment, earnest money, and real estate taxes on the day of closing. They also paid the realtor, the county auditor, delinquent taxes, and real estate taxes. Thereafter, they took possession of the farmland.

G & G then brought suit against the Blomers to enforce the "letter of agreement." The Stalkers intervened in the lawsuit, claiming that the letter of agreement was not an enforceable contract. The district court denied the Stalkers' and Blomers' initial motions for summary judgment and proceeded to trial.

After a weeklong jury trial, the trial court left the issue of the enforceability of the letter of agreement to the jury. The jury returned a special verdict, finding that G & G and the Blomers, by their words, actions, conduct, and surrounding circumstances, expressed mutual assent to be bound to the letter of agreement for the sale of the farm. The jury determined the letter of agreement was a binding contract that was unambiguous and an intentional act on the part of the Blomers. The trial court denied the Stalk-

ers' and Blomers' motion for judgment notwithstanding the verdict (JNOV).

At a court trial on the remaining damage issues, the Blomers failed to appear. The trial court issued findings of fact, conclusions of law, and order for judgment incorporating the jury's special verdict and determining that G & G Partnership was entitled to specific performance, but no loss of profit damages, because it failed to prove lost profits with the necessary degree of certainty. The court also awarded the Stalkers attorney fees and $32,286.42 in damages. The court based this award on the Blomers' reckless disregard and indifference to the rights of the Stalkers, who had entered into a contract for deed with the Blomers prior to the Blomers' negotiation with G & G.

### ISSUE

Did the trial court err in allowing the jury to decide that the letter of agreement was an unenforceable contract, and in denying JNOV?

### ANALYSIS

■ The Stalkers contend the trial court erred when it failed to rule, as a matter of law, that the letter of agreement was an unenforceable agreement to agree. They contend the issue was one of law for the court to determine and was not an issue for the jury to determine as a matter of fact.[1]

■ Whether a letter of agreement constitutes an enforceable contract is a question of law that this court determines de novo. *See Lindgren v. Clearwater Nat'l Corp.*, 517 N.W.2d 574, 574 (Minn.1994) (construing de novo whether letter of intent was enforceable contract or unenforceable agreement to agree); *see also A.J. Chromy Constr. v. Commercial Mech. Servs.*, 260 N.W.2d 579, 582 (Minn.1977) (this court reviews questions of law de novo); *Marso v. Mankato Clinic, Ltd.*, 278 Minn. 104, 114, 153 N.W.2d 281, 288

(1967) (interpretation of an unambiguous writing is question of law for court).

■ In Minnesota, a letter creating an agreement to negotiate in good faith in the future is not enforceable because it does not constitute the parties' complete and final agreement. *Lindgren*, 517 N.W.2d at 574; *see also Hansen v. Phillips Beverage Co.*, 487 N.W.2d 925, 927 (Minn.App.1992) (holding unenforceable a letter of intent that contained "nonbinding offer" for sale of business; holding that letter was merely agreement to negotiate in good faith in future).

The Eighth Circuit Court of Appeals acknowledges this rule of law in *Schoffman v. Central States Diversified, Inc.*, 69 F.3d 215, 221 (8th Cir.1995). There, employees sought to enforce the terms of a letter they received from the chief financial officer regarding the business organization, their employment, and their compensation. The court held the letter was too vague to be enforceable under Minnesota law because it merely represented a summary of negotiations and a willingness to enter a future binding agreement. *Id.* The Eighth Circuit came to the same conclusion under similar circumstances in *Consolidated Grain & Barge Co. v. Madgett*, 928 F.2d 816, 817–18 (8th Cir.1991) (holding agreement to negotiate in good faith over profit-sharing issue was unenforceable) and *Ohio Calculating, Inc. v. CPT Corp.*, 846 F.2d 497, 501 (8th Cir.1988) (holding agreement to begin negotiations for purchase of business was "unenforceable and unremediable").

In *Lindgren*, the parties drafted a "letter of intent" for the sale of townhomes. The letter contained this provision: "The parties shall enter into a definite purchase agreement which shall be drafted by the buyers within 30 days." *Id.*, 517 N.W.2d at 574. The supreme court determined that this language merely created an agreement to negotiate in good faith and was not the complete and final agreement that would govern their

---

1. G & G claims that the trial court determined this issue when it denied summary judgment to the Stalkers and Blomers. The trial court, however, denied summary judgment on the basis that an issue regarding the parties' intentions still remained for the jury. Thus, although the court

denied the motion for summary judgment, it did not rule on the validity or enforceability of the contract; rather, the court left the preliminary question of the existence of the contract to the jury and left the issue of validity unresolved.

conveyance of property. *Id.* The court held the agreement unenforceable despite the fact that the letter included precise sale terms, such as the property's legal description; the purchase price, including the requisite earnest money deposit; the precise terms of the mortgage, including the amount, percentage, and due dates; and a closing deadline.[2]

The document at issue here is a "letter of agreement" that G & G drafted and presented to the Blomers for signature on February 13, 1994. The pertinent text of that letter reads:

> This is a Letter of Agreement outlining the terms of a future transaction regarding the purchase of a parcel of land by G & G Partnership (G & G) from Paul and Mavis Blomer (Blomer). The parties agree to the following:
>
> [G & G set out agreement to purchase 160 acres for $150/acre and terms of payment, allow Blomers access to wooded land for firewood, provide one Holstein calf per year for 10 years, and provide Blomers with 10 large bales of hay per year].
>
> The above is agreed to and the parties agree to proceed forward with a formal agreement.

G & G contends that letter was the sum total of its agreement with the Blomers for the purchase of the farm and was the equivalent of, and a non-standard version of, a purchase agreement. We disagree. The letter of agreement only contained the approximate amount of acreage G & G would purchase, the price per acre, the percentage of down-payment, and a few other purchase terms, such as providing the calf and the hay annually. As we have discussed, the supreme court in *Lindgren* held unenforceable a letter of intent that contained much more detail than G & G's letter of agreement. Furthermore, the text of G & G's letter of agreement contained the phrases "outlining the terms of a future transaction regarding the purchase of a parcel of land" and "the parties agree to proceed forward with a formal agreement." This language on its face speaks of future actions and agreements between the parties. Like letters of intent and agreements to negotiate in the future, this letter of agreement was an unenforceable agreement to agree in the future.

## DECISION

The letter of agreement that G & G drafted and the Blomers signed was an unenforceable agreement to agree in the future. The trial court erred as a matter of law when it failed to rule that the letter was an unenforceable contract and, instead, awarded G & G judgment based on the jury's determination that a binding contract existed.

We reverse the decision of the trial court with directions to vacate the award of monetary damages and attorney fees to the Stalkers and to reinstate Stalkers as owners of the land involved under their contract for deed dated March 23, 1994.

**Reversed.**

---

**2.** Although the supreme court did not cite these facts in its opinion, the holding was based on these and other facts set forth in this court's unpublished opinion. See *Lindgren v. Clearwater Nat'l Corp.*, No. C6–93–1556, 1994 WL 25486 (Minn.App. Feb. 1, 1994).