# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1071

_____

Richie Company, LLP,

        Plaintiff - Appellant,

v.

Lyndon Insurance Group, Inc.,

        Defendant - Appellee.

Appeal from the United States
District Court for the District
of Minnesota.

_____

Submitted: October 10, 2002

Filed: January 9, 2003

_____

Before RILEY, RICHARD S. ARNOLD, and SMITH, Circuit Judges

_____

SMITH, Circuit Judge.

Richie Company, LLP ("Richie"), appeals the District Court's[1] summary judgment in favor of Lyndon Insurance Company, Inc. ("Lyndon"), in Richie's breach-of-contract lawsuit. The District Court determined that a letter of agreement between the parties was an unenforceable "agreement to agree" rather than an enforceable contract under Minnesota law. We affirm.

_____

[1] The Honorable David S. Doty, United States District Court Judge for the District of Minnesota.

I.

The dispute in this case centers around a document referred to as a "letter of agreement" between Richie and Lyndon. Richie and Lyndon began negotiating plans for Lyndon to acquire ownership of or an interest in one or two extended-warranty service-contract companies--First Protection Corporation ("FPC") and Mechanical Breakdown Protection, Inc. ("MBPI"). Richie conceived the acquisition plan while doing business with MBPI through a July 1998 agreement. Under that agreement, MBPI paid Richie a $12.50 fee for each service contract issued, sold, or administered by MBPI or an MBPI affiliate for a period of twenty-five years.

In the letter of agreement signed April 16, 1999, Richie initially proposed two acquisition scenarios[2]. Richie sought compensation from Lyndon for bringing the opportunities to Lyndon in a fee-per-contract arrangement "substantially identical"[3] to that in Richie's contract with MBPI. In the letter, the parties set forth general terms of compensation that would be included in a subsequently-drafted "Service Contract Agreement" between Lyndon and Richie.[4] On March 6, 2000, Lyndon closed on the

---

[2] The letter detailed the possible acquisition scenarios. The first involved Lyndon acquiring FPC and an equity interest in MBPI by means of a contribution of FPC and cash to MBPI. The second, and the one at issue in this case, involved Lyndon acquiring FPC but not contributing it to MBPI. These provisions were subject to both parties' due diligence, and there was no requirement that Lyndon consummate any transaction.

[3] The term "substantially identical" was not defined in the April 16, 1999, letter. According to Richie's minority stockholder, Paul Ravich, the parties never discussed the meaning of the term.

[4] The letter provided that in the second situation, "Lyndon has agreed that it will enter into a Service Contract Agreement with Richie substantially identical to the Service Contract Agreement between Richie and MBPI and pay Richie $12.50 for each Service Contract created by FPC for a period of 25 years." The letter also indicated that the parties would enter into this agreement within 180 days after Lyndon acquired FPC.

FPC acquisition, and FPC has since been operated as one of Lyndon's subsidiaries. The parties never entered into a final "Service Contract Agreement" as anticipated in the April 16 letter.

Richie filed suit on August 28, 2000, claiming that Lyndon breached a contract by failing to enter into a "Service Contract Agreement" that was "substantially identical" to the Richie/MBPI agreement noted in the April 16 letter. For relief, Richie sought either performance on the contract or payment of damages for failure to perform. Lyndon responded that the parties never entered into a binding agreement requiring that they contract at a later date. Furthermore, Lyndon noted that Richie never negotiated or presented the contemplated "Service Contract Agreement" for signature and never asked Lyndon to begin paying any of the fees detailed in the letter.

The parties filed cross-motions for summary judgment, and Lyndon filed a motion for partial summary judgment on Richie's claim for anticipatory breach of contract. On December 5, 2001, the District Court granted Lyndon's motion, denied Richie's motion, and dismissed Richie's claims with prejudice. The District Court determined that the "letter of agreement" did not constitute a valid contract under Minnesota law but was instead an "agreement to agree." As such, the District Court dismissed Richie's breach-of-contract claim.

## II.

### Standard of Review

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and upholding summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1147 (8th Cir. 1998) (per curiam); Fed. R. Civ. P. 56(c). Contract interpretation and interpretation of an unambiguous contract is a question of law. *Simeone v. First Bank*

*Nat'l Ass'n*, 971 F.2d 103, 106 (8th Cir. 1992); *McCormack v. Citibank, N.A.*, 100 F.3d 532, 538 (8th Cir. 1996). Under Minnesota law, whether a letter of agreement constitutes an enforceable contract is a question of law that is reviewed de novo. *See Lindgren v. Clearwater Nat'l Corp.*, 517 N.W.2d 574 (Minn. 1994).

## III.

The dispositive issue is whether the April 16 letter of agreement is an unenforceable agreement to agree or an enforceable contract under Minnesota law. Minnesota law provides that an "agreement to agree" is not enforceable. *See Ohio Calculating, Inc. v. CPT Corp.*, 846 F.2d 497, 501 (8th Cir. 1988).[5] Such agreements are generally unenforceable because they provide neither a basis for determining the existence of a breach nor for giving an appropriate remedy. *Ohio Calculating, Inc.*, 846 F.2d at 502. Furthermore, where the parties have agreed that an "agreement to negotiate" or letter of intent, in its entirety, is not a binding legal agreement, Minnesota courts have refused to enforce an individual provision of the letter as a freestanding "contract" promise. *Huber and Sons, Inc.,* 2002 WL 1338036 (citing *Hansen*, 487 N.W.2d at 927). As the Minnesota Court of Appeals noted in *Hansen*, no contract exists "where two parties consider the details of a proposed agreement,

---

[5] *See also Lindgren v. Clearwater Nat'l Corp.*, 517 N.W. 2d 574 (Minn. 1994) (concluding that "letter of intent" was unenforceable agreement to negotiate); *Mohrenweiser v. Blomer*, 573 N.W.2d 704, 706 (Minn. App. 1998) (referring to "letter of agreement" as "an unenforceable agreement to agree in the future"), *review denied* (Minn. Feb. 19, 1998). No contract is formed by the signing of an instrument when one party knows the other does not intend to be bound by the document. *Hamilton v. Boyce*, 48 N.W.2d 172, 174 (Minn. 1951); *Hansen v. Phillips Beverage Co., et al.*, 487 N.W.2d 925, 927 (Minn. Ct. App. 1992). A letter creating an agreement to negotiate in good faith in the future is not enforceable where the parties have contemplated that the agreement is not the complete and final agreement governing the transaction at issue. *Huber and Sons, Inc. v. Service Corp. Int'l*, 2002 WL 1338036 (D. Minn. June 17, 2002); *Lindgren*, 517 N.W.2d at 574; *Consolidated Grain & Barge Co. v. Madgett*, 928 F.2d 816, 817-818 (8th Cir. 1991) (citing *Ohio Calculating, Inc.*, 846 F.2d at 501).

perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes the document." *Hansen*, 487 N.W.2d at 927 (citing *Northway v. Whiting,* 436 N.W.2d 796, 799 (Minn. App. 1989) (quoting 1 A. Corbin, *Contracts*, § 30 at 97 (1973 ed.)). However, the parties need not agree on every point, but only that the parties' intent as to fundamental terms be reasonably certain. *Hill v. Okay Construction Co., Inc*., 252 N.W.2d 107, 114 (Minn. 1977). But where substantial and necessary terms are left open for future negotiation, the purported contract is void. *King v. Dalton Motors, Inc*., 109 N.W.2d 51, 52-53 (Minn. 1961).

In *Lindgren,* the parties drafted a letter of intent for the sale of town homes. The letter contained a specific provision stating that "the parties shall enter into a definite purchase agreement which shall be drafted by the buyers within 30 days." *Lindgren,* 517 N.W.2d at 574. The Minnesota Supreme Court determined that this language created only an agreement to negotiate in good faith in the future and was not the complete and final agreement that would govern the conveyance of property. *Id.* Despite the inclusion of precise sale terms, such as the property's legal description, the purchase price, the terms of the mortgage, and a closing date, the court nonetheless held that the agreement was unenforceable as a contract. In sum, the court determined that if a letter of agreement merely represents a summary of negotiations and contains an expression of willingness to enter into a binding agreement at a future date, such an agreement is unenforceable as a contract under Minnesota law. *See Lindgren,* 517 N.W.2d at 574; *Mohrenweiser,* 573 N.W.2d at 706; *Metro Office Parks Co. v. Control Data Corp.,* 205 N.W.2d 121, 125 (Minn. 1973) (holding that as a matter of law letter of intent not binding unless parties manifest an intent that it be so).

Given similar facts, this court has reached the same conclusion. *See Consol. Grain and Barge Co.,* 928 F.2d at 817-818 (holding that an agreement to negotiate in good faith over profit-sharing issue was unenforceable as a contract); *Ohio*

*Calculating, Inc.,* 846 F.2d at 501; *C & S Acquisitions Corp. v. Northwest Aircraft, Inc.,* 153 F.3d 622, 626 (8th Cir.1998) ("[u]nder Minnesota law, agreements to negotiate in good faith in the future are unenforceable as a matter of law."). *See also Schoffman v. Cent. States Diversified, Inc.,* 69 F.3d 215, 221 (8th Cir.1995) (holding that a letter employer gave to employees regarding information about their employment and compensation was too vague to be enforceable under Minnesota law because it merely represented a summary of negotiations and a willingness to enter into a future binding agreement).

We agree with the District Court's determination that the April 16 letter was not a contract but an unenforceable agreement to agree. The letter provided that in the event Lyndon acquired FPC and did not transfer it to MBPI within 180 days, "Lyndon has agreed that it *will enter* into a service contract agreement with Richie substantially identical" to the Richie/MBPI agreement. (Emphasis added.) The District Court noted that the language in the April 16 letter is nearly identical to the language that the Minnesota Supreme Court considered in *Lindgren*, providing that "[t]he parties shall enter into a definite purchase agreement which shall be drafted ... within 30 days." That language, like the language in the April 16 letter, spoke of future actions and agreements contemplated but not yet completed by the parties, and showed that the letter "was not the complete and final agreement the parties contemplated would govern" but "merely created an agreement to negotiate in good faith." *Lindgren,* 517 N.W.2d at 574; *see also Hansen,* 487 N.W.2d at 927 ("[the] letter creates merely an agreement to negotiate in good faith. Under Minnesota law such an agreement is unenforceable where the agreement evidences nothing more than an intention to negotiate in the future."); *Schoffman,* 69 F.3d at 221.

Finally, because we affirm the District Court's determination that the April 16 letter of agreement is not a contract under Minnesota law, we do not address Richie's argument that the April 16 letter is an unambiguous contract that need not be interpreted by a jury.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.