**NMC FINISHING, doing business as Nickell Moulding, Inc., Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 95–2576, 95–2806.

United States Court of Appeals, Eighth Circuit.

Submitted April 8, 1996.

Decided Dec. 2, 1996.

Spencer Robinson, argued, Pine Bluff, AR, for petitioner.

John Ferguson, argued, Washington, DC (Joan E. Hoyte, on the brief), for respondent.

Before MAGILL, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

In this case, we decide whether an employer must reinstate a striking employee who is guilty of obscene, abusive and offensive picket line conduct directed at a non-striking fellow employee. The National Labor Relations Board (NLRB or Board) found the employer in violation of section 8(a)(3) and (1) of the National Labor Relations Act (NLRA) (29 U.S.C. § 158(a)(3) and (1)) and ordered reinstatement. The employer petitions this court for review of the Board order, asking us to set it aside. The Board cross-petitions for enforcement of the order pursuant to 29 U.S.C. § 160(e) and (f). We grant the employer's Petition for Review, vacate the order and deny the Board's request for enforcement.

## I. FACTS

The United Steel Workers of America, AFL–CIO, CLC (Union) became the collective bargaining representative of the production and maintenance employees of petitioner/cross-respondent NMC Finishing, Inc.,

d/b/a Nickell Moulding, Inc. (Employer or NMC). After bargaining toward a collective bargaining agreement failed, an economic strike against NMC was commenced. Cleata Draper, a five-year employee of the Company, chose to join the strike. Rhonda Yarborough elected to become a crossover employee and worked throughout the course of the work stoppage.

On the tenth day of the strike, Draper obtained a homemade picket sign from a fellow employee, Priscilla Rogers, and carried it for at least five minutes at the shipping and receiving gate of the Company plant. At the time she carried the sign (4:25 to 4:30 P.M.) Company vans were transporting crossover and newly hired employees, including Yarborough, away from the facility. The sign said, "Who is Rhonda FSucking today?" There is no dispute that the sign was directed at Yarborough.

There is minor argument over whether Yarborough actually saw the sign, although she initiated a complaint with Company General Manager Michael Pilgreen who testified that Yarborough was upset by what the sign implied. Under the law applicable to this incident, Yarborough's subjective reaction is not a material issue.

Although Draper and Rogers otherwise described the message intended by the sign, the Board was persuaded "that they [Draper and Rogers] knew and intended for the sign to have the sexual connotation that a cursory reading of the sign indicates." *NMC Finishing, Inc.*, 317 NLRB 826, 827, 1995 WL 350300 (1995). The Board also found the sign to be "offensive," "clearly offensive," and "abusive and uncalled for." *Id.* at 828–29. The Board concedes in its brief that "[s]imply put, Draper carried a sign with an obscene message." Respondent's Brief at 13. We agree with all of these descriptions.

The strike concluded with the execution of a collective bargaining agreement. The Company offered reinstatement to all strikers, except Draper. She was discharged for misconduct arising out of her carrying of the picket sign.

Upon the Union's complaint, the Board found that NMC was guilty of an unfair labor practice in violation of the NLRA because of its discharge of Draper and ordered reinstatement.

## II. DISCUSSION

At first glance, one might think that under *ABF Freight Sys., Inc. v. NLRB.*, 510 U.S. 317, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994), the Board has almost plenary authority to find an unfair labor practice and to order reinstatement of the discharged employee. In *ABF*, the Supreme Court concluded that even an employee who gives false testimony under oath at a Board proceeding can be reinstated under the broad "remedial authority" granted the Board by Congress. *Id.* at 324, 114 S.Ct. at 840. But, this is not an *ABF* case. In *ABF*, the Board found and the Supreme Court assumed, that the employee was "fired ... for tardiness under [a] new policy on lateness," and not for "cause" based upon dishonesty arising from the employee's lying. *Id.* at 318, 320, 114 S.Ct. at 837, 838. (A false reason for tardiness was advanced by the employee in his explanation to ABF and it was repeated under oath at the hearing before an Administrative Law Judge.) Further, the Board found that the discharge was really an act of antiunion animus by ABF, not a discharge for cause based upon the false information.

In this case, on the other hand, we have no showing whatever of antiunion animus on the part of NMC. Indeed, it agreed to reinstate and did reinstate every striker, including Rogers who made the sign, except Draper. Here, instead, we have a discharge for cause arising from outrageous conduct. Thus, this case fits squarely within our recent holding in *Earle Indus., Inc. v. NLRB*, 75 F.3d 400 (8th Cir.1996). We, therefore, analyze this matter under that binding precedent.

Section 8(a)(1) of the NLRA provides that:

It shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

29 U.S.C. § 158(a)(1). Section 7 of the NLRA, codified at 29 U.S.C. § 157 states:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

The Act also provides, in part, in section 8(a)(3), that:

It shall be an unfair labor practice for an employer ... by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

29 U.S.C. § 158(a)(3).

Accordingly, it is clear that Draper had the statutory right to participate in the economic strike and Yarborough had a similar right to cross the picket line and work. However, not every act in support of or opposition to unionization by an employee is protected by the law.

We note at the outset that obscenity, especially obscenity designed to "degrade and humiliate" may have no protection whatever under the NLRA. *See NLRB v. Longview Furniture Co.*, 206 F.2d 274, 275 (4th Cir. 1953). We need not decide that issue in this case, however. We assume, instead, that some obscenities hurled in the rough and tumble of an economic strike may, indeed, be protected speech. By that we mean, it may be misconduct but not misconduct that is sufficient to take the acts outside of the protections afforded strikers under the NLRA.

The Board (and NMC as well) looks to *Clear Pine Mouldings, Inc.*, 268 NLRB 1044, 1984 WL 36067 (1984) for the standard governing employee reinstatement for strike-related misconduct such as we have in this case. *NMC Finishing, Inc.*, 317 NLRB at 827. The test is

whether the misconduct is such that, under the circumstances existing, it [the misconduct] may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act.

*Clear Pine Mouldings*, 268 NLRB at 1046. This standard was somewhat clarified by *Mohawk Liqueur Co.*, 300 NLRB 1075, 1990 WL 257486 (1990). The test does not depend upon the subjective reaction of any particular employee, that is whether the specific individual was actually coerced or intimidated. *Id.* at 1075. The standard is objective in nature. "[T]he [*Clear Pine*] test is applied to determine whether the conduct at issue would reasonably tend to coerce or intimidate an individual faced with such conduct." *Id.* This is a question of law in our view, or, at least, a mixed question of law and fact.

Here, as a factual matter, the Board clearly established misconduct by Draper. As earlier indicated, the sign with "sexual connotation," directed specifically toward Yarborough, was "offensive," "clearly offensive," and "abusive and uncalled for." Would this particular conduct, then, reasonably tend to coerce, intimidate, embarrass, or harass a nonstriking employee under an objective *Mohawk Liqueur* evaluation? We think it would.

The Board cites in its brief and in its order a plethora of cases in which it has validated the use of vulgar, vicious, and insulting language during picket line face-offs. Whether these cases were correctly decided, as a general matter, is not for us to decide today.

NMC argues that there are differences here. It contends that much, if not all, of the permitted language in the cited cases can be construed as expressions of opinion verbally directed to others in a loose and figurative way. Petitioner's Reply Brief at 9. Here, the offensive and obscene message was, according to NMC, more coercive and embarrassing because it was published on a sign that was intended to be, and was, seen by everyone at the exit gate, union sympathizer, crossover worker, company manager and passerby alike and it was addressed to one person, Rhonda Yarborough. We agree with

this assessment. Accordingly, we turn to *Earle Industries* for guidance.

In *Earle Industries,* Earley Mae Wallace, an advocate of unionization, was discharged for insubordination and dishonesty, following an incursion inside Earle's plant, through the employees' door, by the Reverend Jesse Jackson, Wallace and a crowd of unruly individuals. 75 F.3d at 402. The union filed an unfair labor practice complaint but an Administrative Law Judge recommended upholding the dismissal, finding that Wallace had forfeited the protection of the NLRA as a result of her misconduct. *Id.* at 403. The Board reversed. It held that Wallace's insubordination and other misconduct, occurring during a union organizing activity, fell "into a class of protected misbehavior or 'leeway,'" considered necessary by the Board to accommodate the realities of industrial life. *Id.* at 404. This court disagreed, however, granting Earle's petition for review and denying enforcement of the Board's reinstatement order. *Id.* at 407.

■ We acknowledged the Board's power and responsibility to balance an employee's section 7 rights against an employer's business interests. *Id.* at 405. We further recognized that we review the Board's findings under the substantial evidence on the record as a whole standard, *id.,* and we generally defer to the Board's discretion in ordering a reinstatement. *Precision Window Mfg. v. NLRB,* 963 F.2d 1105, 1107 (8th Cir.1992). Nonetheless, we held in *Earle Industries* that though the Board's reinstatement decision is discretionary, it is not beyond review. 75 F.3d at 405. "And, more to the point, [any] balancing test must be anchored in the policies of the National Labor Relations Act." *Id.*

Thus, analysis of this case must fall within rules set out in *Earle Industries.* The policy in play here is, of course, the objective standard of *Clear Pine Mouldings* as clarified by *Mohawk Liqueur.* We note, however, that the balancing test in this case is different than in *Earle Industries.* There, the balance was between the employee's section 7 rights and the employer's right to operate its business without unreasonable outside interference and without employee falsehoods and

insubordination. Here, we have counterbalancing section 7 rights—Draper's right to strike versus Yarborough's right to cross the picket line and work. We also have NMC's responsibility to be supportive of both employees' NLRA rights and, additionally, NMC's rights to continue the operation of its business with workers that are not unreasonably coerced or intimidated by striking employees.

■ The material facts are not genuinely in dispute. The findings of the Board that Draper's conduct was offensive, abusive, and obscene are established in its order and are not clearly erroneous. Accordingly, Draper's misconduct occurred. We must, therefore, review whether the Board was correct in determining, under the *Clear Pine Mouldings* standard, that the misconduct would not "tend to coerce or intimidate" an objective employee under the same circumstances. We believe our review under this objective test involves a question of law (or at least a mixed question of fact and law) which we review de novo. And, even if our review must be deferential to the Board's discretion as stated in *Earle Industries,* we conclude that the Board was wrong. In other words, it abused its discretion, if that is the applicable test.

Had the offensive words been part of a package of verbal barbs thrown out during a picket line exchange or of a sign-borne message dealing with the morals and character of crossovers generally, we might have a different view. Here, however, a specific employee was singled out and vilified by a sign paraded in the presence of everyone near to or passing by the exit gate. There is no question in our mind that an objective, reasonable employee in Yarborough's shoes would have tended to feel coerced, intimidated, harassed and fearful of the rationality of a person with the temerity to advance this type of message on a picket line. While we feel strongly that the rough and tumble economic activity permitted by the policies established by Congress through the NLRA must be supported and not unreasonably or unduly inhibited, we feel equally committed to the protection of the rights and sensibili-

ties of those who assert their non-union prerogatives under section 7 of the Act.

## III. CONCLUSION

We grant the petition for review, vacate the Board's order of March 22, 1995, and deny the Board's cross-petition for enforcement.