BENTON, Circuit Judge,
Cooper Tire & Rubber Company fired Anthony - Runion for his conduct on the *889 picket line. The union filed a ■ grievance alleging Cooper violated the collective bargaining agreement by discharging Runion. The arbitrator upheld the discharge. The Administrative Law Judge reversed, holding that the firing violated.the National Labor- Relations Act, 29 U.S.C. § 151 et seq. The National Labor Relations Board upheld the ALJ. Having jurisdiction under 29 U.S.C. § 160(e) and (f), this court denies Cooper’s petition for review and enforces the Board’s order.
I.
Cooper employs about 1,000 workers at a tire-manufacturing plant in Findley, Ohio. Cooper locked out union employees after negotiations failed to renew the collective bargaining agreement. During the lockout, union workers picketed outside Cooper’s plant. Cooper continued operating with replacement workers. These workers crossed the picket line arriving and leaving the facility, mostly in Cooper’s vans. Many replacement workers were African-American.
Anthony Runion, a locked-out employee, participated in the picket line. While picketing on the evening of January 7, 2012, he yelled, “Hey, did you bring enough KFC for everybody?” and “Hey anybody smell that? I smell fried chicken and watermelon.” The comments were directed at a van carrying replacement workers that had just crossed the picket line. While yelling,' Runion’s hands were in his pockets; he made no overt physical movements or gestures. There is no evidence the replacement workers heard Runion’s statements (though dozens in the crowd did).
In February, Cooper began recalling locked-out employees. It did not recall Runion, It discharged him for his statements during the January 7 picket. The union filed a grievance alleging Cooper violated the CBA by discharging Runion. The arbitrator found “just cause” under the CBA to fire Runion. The union then submitted the case to an ALJ, who concluded that Cooper violated the Act. The Board upheld the ALJ and ordered Runion reinstated with back pay. Cooper petitions for review.
II.
Section 7 of the Act guarantees employees the right to “assist labor organizations ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.” 29 U.S.C. § 157. Section 7 gives locked-out employees the right to picket. See Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 310 n.10, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). Section 8(a) prohibits an employer from interféring with, restraining, coercing, or discriminating against employees in the exercise of their Section 7 rights. § 158(a)(l)-(3).
“One of the necessary conditions of picketing is a confrontation in some form between union members and employees.” Chicago Typographical Union No. 16, 151 NLRB 1666, 1668 (1965), citing NLRB v. United Furniture Workers of Am., 337 F.2d 936, 940 (2d Cir. 1964). “Impulsive behavior on the picket line is to be expected especially when directed against nonstriking employees or strike breakers.” Allied Indus. Workers No. 289 v. NLRB, 476 F.2d 868, 879 (D.C. Cir. 1973) (internal citation omitted). This court analyzes picket-line conduct under the Clear Pine Mouldings test: a firing for picket-line misconduct is an unfair labor practice unless the alleged misconduct “may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act.” NMC Finishing v. NLRB, 101 F.3d 528, 531 (8th Cir. 1996), citing Clear Pine Mouldings, Inc., 268 NLRB 1044, 1046 (1984), enf'd, 765 F.2d 148 (9th Cir. 1985). The test is objective. Id.
*890 The Board has authority to order “reinstatement of employees with or without back pay, as will effectuate the policies” of the Act. 29 U.S.C. § 160(c). This court will “enforce the Board’s order if it has correctly applied the law and its factual findings are supported by substantial evidence on the record as a whole, even if we might have reached a different decision had the matter been before us de novo.” NLRB v. RELCO Locomotives, Inc., 734 F.3d 764, 779-80 (8th Cir. 2013)' (internal citation omitted). This court “generally de-ferís] to the Board’s discretion in ordering a reinstatement.” NMC Finishing, 101 F.3d at 532 (internal citation omitted). See generally Lechmere, Inc. v. NLRB, 502 U.S. 527, 537, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) (“[T]he NLRB is entitled to judicial deference when it interprets an ambiguous' provision of a statute that it administers.”). This court “must deny enforcement if the Board’s determination is illogical or arbitrary.” Earle Indus., Inc. v. NLRB, 75 F.3d 400, 405 (8th Cir. 1996).
III.
Cooper argues this court should not defer to the Board. It contends the Board should have analyzed Runion’s discharge not under Clear Pine Mouldings, but under Wright Line, 251 NLRB 1083 (1980), enf'd, 662 F.2d 899 (1st Cir. 1981). Wright Line applies “when an employer has discharged (or disciplined) an employee for a reason assertedly unconnected to protected activity.” Shamrock Foods Co. v. NLRB, 346 F.3d 1130, 1135 (D.C. Cir. 2003) (emphasis in original). See RELCO Locomotives, 734 F.3d at 780 (“The Wright Line analysis is only necessary if the employer’s stated rationale for termination is not activity protected by the NLRA.”). See also Consol. Commc’ns., Inc. v. NLRB, 837 F.3d 1, 12 n.3 (D.C. Cir. 2016) (explaining Wright Line “has no application to striker misconduct cases”). In Wright Line, the, employer claimed the employee was terminated for inaccurate recordkeeping. Wright Line, 662 F.2d at 900. Here, Cooper does not allege that Runion was fired for any reason “unconnected” to participation in the picket line. This court applies Clear Pine Mouldings to evaluate a firing for alleged misconduct during picketing. See NMC Finishing, 101 F.3d at 531.
Cooper believes that NMC Finishing and Earle “compel a finding that Cooper did not violate the Act when it discharged Runion.” In NMC Finishing, a picketer held up a sign for five minutes that said “Who is RhondaF Sucking Today?” Id. at 530. The sign was directed at a specific employee crossing the picket line. Id. Applying Clear Pine Mouldings, this court concluded that the singled-out woman would—objectively—feel coerced, intimidated, or harassed. Id. at 532. This court emphasized that' an individual was singled out: '
Had the offensive words been part of a package of verbal barbs 'thrown out during a picket line exchange or of a sign-borne message dealing with the morals and character of crossovers generally, we might have a different view. Here, however, a specific employee was singled but and vilified by a sign paraded in the presence of everyone near to or passing by the exit gate.
Id. (emphasis added). Here, Runion’s comments were not directed'at any one individual. Nor were they on display for an extended period. Runion’s words were a “package of verbal barbs thrown out during a picket line exchange.” The NMC Finishing case supports the Board, not Cooper.
In Earle, the employee was fired for dishonesty and insubordination on the plant floor. Earle, 75 F.3d at 407. There was neither an ongoing strike nor a picket *891 line. Id. at 401-03. Earle distinguished its facts from cases “in the context of strikes” and “grievances.” Id. at 406 (recognizing that “in the context of strikes,” there exists “the need to excuse impulsive, exuberant behavior (so long as not flagrant or rendering the employee unfit for employment) as an inevitable concomitant of struggle”). The Earle case does not apply here.
The Board relies on Airo Die Casting, Inc., 347 NLRB 810, 811 (2006) and Consolidated Communications. In Airo, replacement workers were transported to an employer’s plant during a strike. Airo, 347 NLRB at 811. During a picket, one picketer advanced towards the replacement workers with both middle fingers extended and screamed “f*** you n*****.” Id. The employer fired the picketer for violating its harassment policy. The Board reversed. Id. at 813. The Board found the picketer’s conduct “did not differ from the general atmosphere on the picket line with thé usual tensions between striker and replacement workers and the use of obscene gestures and vulgar language,” Id. at 812. It concluded that the picketer’s “use of obscene language and gestures and a racial slur, standing alone without any threats or violence, did not rise to the level where he forfeited the protection of the Act.” Id., citing Clear Pine Mouldings, 268 NLRB at 1046.
..In Consolidated Communications, the D.C. Circuit held that a picketer who grabbed his crotch, said “f*** you,” and gave the middle finger, was protected under the Act. Consol. Commc’ns, 837 F.3d at 6. The court ruled that while the actions were “totally uncalled for and very unpleasant,” they could not objfectively be perceived “as an implied threat of the kind that would coerce or intimidate a reasonable [replacement] employee from continuing to report for work.” Id. at 12.
Because the. picketers’ statements in both Airo and. Consolidated .Communications were protected, it was not “illogical or arbitrary” for the .Board to protect Runion’s statements under Clear Pine Mouldings. See Earle, 75 F.3d at 405. Substantial evidence supports the Board’s conclusion that Runion’s statements were “hot violent in character; and they did not contain any overt or implied threats to replacement workers or their property. The statements were also unaccompanied by any-threatening behavior or .physical acts of intimidation by Runion towards the replacement workers in the vans.” This court defers to the Board’s interpretation that Cooper violated the Act by discharging Runion.[1] See Lechmere, 502 U.S. at 537, 112 S.Ct. 841.
IV.
Cooper argues that reinstating Runion conflicts, with its obligations under Title VII. 42 U.S.C. § 2000e, et seq. See generally Southern Steamship Co. v. *892 NLRB, 316 U.S. 31, 47, 62 S.Ct. 886, 86 L.Ed. 1246 (1942) (explaining that the Board may not “wholly ignore other and equally important Congressional ■ objectives”). Harassment is actionable under Title VII if it is so “severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.” Sheriff v. Midwest Health Partners, P.C., 619 F.3d 923, 930 (8th Cir. 2010) (internal citation omitted). Stray remarks in the workplace generally are not severe or pervasive enough-to change the conditions of employment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (“[0]ff-hand comments and .isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions-’of employment.”). This higher standard for workplace harassment prevents attempts to use Title VII to enforce a “general civility code.” Id.
Runion’s comments—^even if they had been made in the workplace instead of on the picket line—did not create a hostile work environment. See Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1085 (8th Cir. 2010) (finding that comment about fried chicken and other incidents were insufficient to create a hostile work environment), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1058 (8th Cir. 2011) (en banc); Reed v. Procter & Gamble Mfg. Co., 556 Fed.Appx. 421, 433 (6th Cir. 2014) (finding comments about fried chicken and watermelon insufficient). Cf. Dowd v. United Steelworkers of Am., 253 F.3d 1093, 1102 (8th Cir. 2001) (affirming jury’s hostile work environment verdict where, over several. days, employees crossing picket line “were subjected to racial slurs and threats of physical violence each time they drove into and out of the plant ... picketers threw tacks down in the pathway of the plaintiffs’ cars and spat on their car windows •... [and] plaintiffs were fearful for their personal safety”); Ellis v. Houston, 742 F.3d 307, 322 (8th Cir. 2014) (finding supervisor’s fried-chicken-and-watermelon comments sufficient for prima facie case and recognizing that “[participation by a supervisor can magnify the impact of harassment” and “such behavior by a supervisor tacitly endorses racist remarks by subordinates and indicates to other officers that this type of joke or remark is acceptable”).
Cooper counters, that, it “has never claimed that Runion’s racist statements, standing alone, would entitle the African-American replacement workers to a judgment against Cooper for a hostile work environment.... Cooper’s position is that it has the legal obligation under Title VII to apply its lawful policy prohibiting harassment to racist statements (even on the picket line).” Still, Cooper was under no “legal obligation” to fire Runion. See Bailey v. Runyon, 167 F.3d 466, 468 (8th Cir. 1999) (“Title VII does not require an employer to fire a harasser.... Rather, what an employer must do is to take prompt remedial action reasonably calculated to end the harassment.” (internal citation omitted)). See also Zirpel v. Toshiba Am. Info. Sys., Inc., 111 F.3d 80, 81 (8th Cir. 1997) (assuming there was a hostile work environment, employer’s warning to harassing employee was sufficient remedial action under Title VII). Cooper’s obligations under Title VII do not conflict with Runion’s reinstatement.[2]
*893 y.
Cooper believes that because the arbitrator found'“just cause” to fire Run-ion, the firing was also “for cause” under Section 10(c) of the Act: “No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause.” 29 U.S.C. § 160(c) (emphasis added). The Act does not define the term “for cause,” so the Board has exercised its authority to interpret the ambiguity. See Lechmere, 502 U.S. at 537, 112 S.Ct. 841 (“[T]he NLRBis entitled to judicial deference when it interprets an ambiguous provision of a statute that it administers.”). “It is important to .distinguish between the term ‘cause’ as it appears in Sec. 10(c) and the term ‘just cause,’ which ... encompasses . principles such. as the law of the shop, fundamental fairness, and related ar-bital decisions.” Taracorp Inc., 273 NLRB 221, 222 n.8 (1984). “For cause” in Section 10(c) “effectively means the absence of a prohibited reason.” Anheuser-Busch, Inc., 351 NLRB 644, 647 (2007). “There is no indication ... that [Section 10(c) ] was designed to curtail the Board’s power in fashioning remedies when the loss of 'employment stems directly from an unfáir labor practice.... ” Fibreboard Paper Prod. Corp. v. NLRB, 379 U.S. 203, 217, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).
Here, the Board concluded that “Runion was discharged for a prohibited reason—the protected activity of engaging in picketing.” Since Runion was discharged for a “prohibited reason,” Cooper did not fire Runion “for cause” under Section 10(c). See id.; Anheuser-Busch, 351 NLRB at 647 (“Since the discipline imposed here was not imposed for a prohibited reason, it was ‘for cause.’ ”),
VI.
Cooper argues the Board abused its discretion by not deferring to the arbitrator’s award. This court reviews the Board’s decision to overrule an arbitrator for an abuse of discretion. See Doerfer Eng’g v. NLRB, 79 F.3d 101, 103 (8th Cir. 1996). For the Board to defer, the arbitrator’s decision must not be “clearly repugnant to the purposes and policies of the Act.” Olin Corp., 268 NLRB 573, 573-74 (1983). An arbitrator’s decision is repugnant to the Act where it is “palpably wrong” or “not susceptible to an interpretation consistent with the Act.” Id. at 574. The Board may “disregard [an arbitrator’s award] if it is inconsistent with the established law.” Local Union No. 884 v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1357 (8th Cir. 1995); Ciba-Geigy Pharm. Div., 264 NLRB 1013, 1016 (1982) (explaining that if an arbitrator’s award “is contrary to well-established Board precedent, the award will be deemed repugnant to the Act and not entitled to deferral”).
Cooper asserts that the arbitrator’s opinion is not “palpably wrong” because it is consistent with Atlantic Steel Co., 245 NLRB 814, 820-21 (1979). Atlantic Steel involved an employee’s outburst on the factory floor. It articulated a balancing test whether that outburst removes the'worker from the Act’s protection. Id. at 816. The Atlantic Steel framework applies to employee misconduct in the workplace—not on the picket line. See Triple Play Sports Bar & Grille, 361 NLRB No. 31, 34 (2014) (“[T]he Atlantic Steel framework is not well suited to address ... employees’ off- *894 duty, offsite [communications] with other employees or with third parties”).
Cooper believes that the Board should defer to the arbitrator as it did in Spielberg Mfg, Co., 112 NLRB 1080, 1082 (1955). Spielberg is distinguished on its facts; there, the striking employees had persistently shouted racist slurs over several days of picketing. See id. at 1084-86. Runion’s statements here were neither persistent nor over several days. According to Cooper, deference is appropriate because the Board in Spielberg deferred to an arbitration award inconsistent with then-existing precedent. The Board’s deference there—regardless of then-existing precedent—does riot require deference under the different facts here.
The Board reasons that the arbitrator used the wrong standard to adjudicate Runion’s stateirients. The arbitrator said Runion’s statements “would have been serious misconduct in any context, but in the context of the picket line, where there was a genuine possibility of violence, his comments were even more serious.”'The arbitrator’s view that a “genuine possibility of violence” made Runion’s comments “even more serious” is contrary to well-established precedent giving greater protection to picket-line misconduct. See Consol. Commc’ns, 837 F.3d at 8 (“The striker-misconduct standard thus offers misbehaving employees greater protection from disciplinary action than they would enjoy in the normal course of employment.”). This precedent accounts for the “rough and tumble” atmosphere of picket lines. See NMC Finishing, 101 F.3d at 531 (describing picketing as part of the “rough and tumble economic activity established by Congress through the NLRA”); Chicago Typographical Union, 151 NLRB at 1669 (recognizing that “one of the necessary conditions of picketing is a confrontation in some form between union members and employees” (citation omitted)); In re United Bhd. of Carpenters, 355 NLRB 797, 802 (2010) (“Th[e] element of confrontation has long been central to our conceptions of picketing-”).
The arbitrator’s view that Runion’s comments were “even more serious” because they were made “in the context of the picket line” is inconsistent with established law. See Local Union No. 884, 61 F.3d at 1357. The Board did not abuse its discretion by not deferring to the arbitrator. See id.; Olin Corp., 268 NLRB at 573-74.
¾⅜ ⅜ ⅜ ⅜ # ⅜
Cooper’s petition for review is denied, and the Board’s order enforced.

. This court agrees with the concurrence in Consolidated Communications:
We have cautioned the Board before against assuming that the use of abusive language, vulgar expletives, and racial epithets between employees is part and parcel of the vigorous exchange that often accompanies labor relations.... [T]he Board’s decisions seem in too many cases ... oblivious to the dark history such words and actions have had in the workplace (and elsewhere).... To be sure, employees’ exercise of their statutory rights to oppose employer practices must be vigorously protected, and ample room must be left for powerful and passionate expressions' of views in the heated context of a strike, But Board decisions’ repeated forbearance of ... racially degrading conduct in service of that admirable goal goes too far.
Consol. Commc’ns, 837 F.3d at 20-24 (Millett, J., concurring) (internal citations and quotation marks omitted).

. Cooper filed a motion to strike certain portions of both the Board and the Union Inter-venor’s briefs. Because this court did not rely on any alleged disparate enforcement of Cooper’s harassment policy, the motion is denied as moot. See Camelot LLC v. AMC ShowPlace Theatres, Inc., 665 F.3d 1008, 1012 n.2 (8th Cir. 2012) (“On appeal Camelot moved to strike four pages of AMC’s appendix..., We do not rely on these materials in construing the lease and deny Camelot’s motion to strike *893 as moot.”). See also Hubbard v. Plaza Bonita, LP, 630 Fed.Appx. 681, 684 (9th Cir. 2015) ("Hubbard’s motion to strike the answering brief and supplemental excerpts of record is denied as moot because we do not rely upon the materials, to which Hubbard objects.”).